The locus in quo is designated on the annexed plat by L, M, N, 5, 4, 3, marked "Disputed." The plaintiff read in evidence a deed from Smith 
Elliott (Jno. D. Smith Geo. Elliott) to himself dated 1 December, 1859, for 1,856 acres, more or less. There was no dispute as to the location of this deed, it commenced at A, and is designated by A, B, C, D, E, F, G, H, I, J, K, L, M, N, O, P, Q, R, S, T, covering the land in dispute. The call in the deed from the corner represented at K, is "then south 60 degrees, east 6 chains and 65 links to a stake and pointers, T. Shaw's corner; then with his line north 63 1/2 degrees, east 31 chains, 29 links to a small gum and gum pointers on the south side of Reedy branch; then north 2 1/2 degrees west, 11 chains, 40 links to a pine with gum and maple pointers in the Reedy branch to T. Shaw's beginning corner, then north 10 degrees west, 43 chains, etc." giving the various calls to the beginning at A. Under the deed the plaintiff entered in 1859, and continued in possession of the land embraced therein; including the disputed part, when two years ago the defendant, under a claim of right, entered upon the disputed part, back-boxed the trees, and cut timber, for which acts this suit was brought.
There was evidence of the amount of damages.
The defendant read in evidence a deed from Henry Elliott to Smith 
Elliott, the parties under whom the plaintiff claims, dated 3 March, 1855; which deed, after giving the boundaries, has this recital "containing 2,925 acres, including 155 1/2 acres, I have sold to Torquil Shaw, and is not here intended to be conveyed."
The location of the deed was agreed upon; its boundaries ran all around the land both of the plaintiff and defendant, and included the land of both.
The defendant next read in evidence a deed from Henry Elliott (486) to himself, dated 19 January, 1855, for 155 1/2 acres, more or less, *Page 353 
[EDITORS' NOTE: THE MAP IS ELECTRONICALLY NON-TRANSFERRABLE.], SEE 67 N.C. 353.] *Page 354 
described as follows: Beginning at a stake and pointers on the south side of the Reedy branch above Torquil Shaw's house, and runs south 63 1/2 degrees, west 28 chains 80 links to a stake and pointers in a small branch; thence south 26 1/2 degrees, east 45 chains to a stake and pointers; thence north 63 1/2 degrees, east 31 chains, 29 links to a small gum and gum pointers on the south side of the Reedy branch; thence north 2 1/2 degrees, west 11 chains, 40 links to a pine with maple and gum pointers on the Reedy branch; thence up the various courses of the Reedy branch, so as not to interfere with a small pond of water on said branch, reserved for the benefit of Smith Elliott's steam mill, to the beginning, containing 155 1/2 acres, more or less."
It was agreed that the beginning corner of this deed was at 1, as represented in the plat; also that running from 1, the course and distance called for at the second corner was at 2. It was also agreed that the course of the line from 2, as called for, was to be followed, to wit: south 26 1/2 degrees east. The point in dispute was where the line running from the corner at 2, in the direction south 26 1/2 degrees east, was to stop, whether at L, as claimed by the plaintiff, or at 3, as claimed by the defendant. If it went to 3, and the remaining lines were run according to course and distance called for, the figures 1, 2, 3, 4, 5 would represent the defendant's land and include the disputed part, so that he would be no trespasser, as he held the oldest deed from Henry Elliott, under whom both claimed. But if it stopped short at L; and the remaining lines were run as called for in the deed, then the figures 1, 2, L, M, N, would represent the defendant's line, and the disputed part would be left out of his line, so that he would be a trespasser. For the defendant, it was in evidence, that there was a marked line of trees, apparently as old as the defendant's deed, from the beginning corner at 1 to 2; also from 2 as far as L; at L was a stake and oak pointers; L was distant from 2 38 chains; there was no (487) marked line between L and 3; there was nothing to indicate a corner at 3; the distance from 5 to 3 was 45 chains, being the distance called for in the deed to defendant. By extending line 2, 3, beyond 3, 1 chain and 25 links, a point is reached where, upon a recent survey made for the defendant two years ago, by one McLean, a stake and pine pointers were marked as a corner; from this point there is an old marked line for about 15 chains in the direction of 4, of apparently the same age as the marked line 1, 2 and 2, L; at the end of the 15 chains the old marked line gives out, but the same surveyor, at the instance of the defendant, and in continuation, as defendant stated, of the old line survey made by Henry Elliott, went on to 4, and there placed a *Page 355 
stake with pine pointers as a corner, in place of a gum, which defendant stated to a witness used to be there.
These statements were made by defendant, in presence of plaintiff, while the survey ordered for this trial was going on. The survey made by McLean was made two years ago. There was nothing at 5 to indicate a corner except a stake, which McLean set up in a field cultivated by plaintiff. It was reached by following course and distance called for as 4th line in defendant's deed, but is on the north side of Reedy branch, instead of on the south side as called for. By running the lines from 3 to 4, and from 4 to 5, the small pond referred to in the deed from Henry Elliott to defendant, and indicated on the plat midway between 5 and N, would be included in defendant's boundary but it would not be interfered with by defendant's deed if his lines were run from L to M, and M to N. The defendant's deed calls for 155 1/2 acres, more or less. By running the outside line as claimed by him, and thus including the disputed part, he would get by surveyor's estimate 153 acres. By running the inside lines L M and M N, and thus leaving out the disputed part, he would get but 123 acres — the disputed part containing 30 acres.
It was also in evidence for the defendant, that the distance from 2 to L is 38 chains, whereas the second line of his deed calls (488) for 45 chains, and it was agreed by all the surveyors examined, that if the line L M was reversed as to course and distance, it would stop at L, but that in reversing from L, if the whole distance called for was run, the line from L would extend 7 chains beyond 2, the admitted second corner of defendant's deed. The defendant also proved that his deed was in the handwriting of Henry Elliott, now dead; that Elliott kept surveying instruments, and sometimes did his own surveying, but usually got Surveyor McCormick to do difficult surveying for him.
In reply to defendant's evidence, it was in evidence for the plaintiff that in 1858 the defendant pointed out to the witness, Surveyor McCormick, the stake and oak pointers at L, and told him that Henry Elliott had marked the lines, and had made the corner at L, as a corner of his land; also that defendant pointed out a gum pointed at M, which he said Elliott had marked as a corner; the gum at that time being as large as a man's leg, which gum had since rotted down, but the stump still remaining; also that defendant pointed out a pine marked as a corner with gum and maple pointers in the Reedy branch at N, which are still there, and told witness that Elliott had marked them as a corner. In the conversation alluded to the defendant did not specify the day when Henry Elliott marked these lines and corners, whether *Page 356 
before or after the conveyance, but merely stated the fact. The plaintiff also proved by all the surveyors that there was a marked line from L to M, running the course and distance called for as the 3d line of defendant's deed, apparently as old as the line from 1 to 2 and from 2 to L, that at M, on the south side of Reedy branch, there was a gum stump and gum pointers; that there was an old marked line from M to N running the course and distance called for as the 4th line of defendant's deed; that at N is a pine marked as a corner, with gum and maple pointers on the Reedy (489) branch. It was also in evidence, that upon the recent survey no sign of a gum could be found at 4, which was high and dry land; it was in proof, however, that gums are short lived trees, that there was clearing and ditching and burnt woods in that locality. It was also proved that the defendant, in the lifetime of Henry Elliott, had complained of his not getting his complement of land, and after Elliott's death, which occurred several years ago, had complained to his executor about it; that they had engaged a surveyor to ascertain the deficiency with a view of its being settled for, and that the defendant had dropped the deficiency from his tax list. The corners L, M and at F, were apparently as old as the agreed corners. The plaintiff offered to introduce a deed from Smith and Elliott (the same parties under whom he claimed), to the defendant, dated 4 February, 1858, for a tract of land adjoining the land of the plaintiff and the defendant's 155 1/2 acre tract, being part of the land conveyed to them in the Henry Elliott deed; it was offered with the avowed purpose of fixing the 3d corner of defendant's 155 1/2 acre tract at the point L.
The defendant's counsel objected to the evidence for such purpose, and asked his Honor to exclude it.
His Honor remarked that he would admit the evidence, but would reserve his opinion as to its legal effect. The deed was read in evidence. There was no dispute as to its location. It is designated on the plat. Its beginning corner is the same as the beginning corner of the 155 1/2 acre tract of the defendant, at 1 or O, which is the same, then to P, then to John Elliott's corner, then to D, then to E, then to F, then G, then to H, then to I, then to J, then to K, then south 60 degrees east 6 chains 65 links to a stake and pointers, his own corner; the course and distance leading towards L, the distance would fall short 25 links as measured, then with his own line to his corner at 2, and then to the beginning.
His Honor afterwards being of the opinion that the taking of this deed by the defendant was evidence of a recognition by him of (490) the dividing line between him and the plaintiff to wit: the line *Page 357 
running from D, by the various courses up to L, and as such, ought to go to the jury, upon the question of the location of the corner at L, as a circumstance to be considered by them, and also being of opinion that the plaintiff was entitled to submit evidence of this act of the defendant (taking such deed) as confirmation of the evidence of Surveyor McCormick in regard to the statement of the defendant about this very corner at L. Upon these considerations his Honor refused to exclude the evidence, and defendant excepted.
The plaintiff proved by a witness, Angus Shaw, that on one occasion after the defendant had obtained his deed from Henry Elliott for the 155 1/2 acres, that witness was present with defendant on the land, upon which occasion the defendant complained that Elliott had not given him his complement of land.
The plaintiff then offered to prove by this same witness that upon the same occasion the defendant pointed to a bunch of gums 60 or 70 yards distant from where they were standing, and remarked to witness that Elliott had made "a corner in those gums and hadn't given him his complement of land."
To the reception of this evidence the defendant objected. His Honor remarked that the objection was well taken, unless the particular corner pointed out was identified. The witness then testified that the bunch of gums referred to stood at the mouth of a small branch where it empties into Reedy branch. Surveyor McCormick was then called to the witness stand and testified that the locality of the gum corner at M; where the defendant had showed him the gum the size of his leg, marked as a corner by Elliott, and where the gum stump is still to be found corresponds with the description of the spot spoken of by the witness Angus Shaw. Upon this proof as to the identity of the corner being made his Honor admitted the proposed proof; and the witness Angus Shaw testified accordingly.
The defendant excepted. The defendant's counsel asked for the following special instructions to the jury:
1st. That the land of the defendant should be so located as to enclose within its boundaries the small pond mentioned in the (491) deed from Henry Elliott to Torquil Shaw, January 19, 1855, and reserved for the benefit of Smith Elliott's steam mill."
This instruction was declined. Defendant excepted.
2d. That as 155 1/2 acres of the land were reserved by Henry Elliott in his deed to Smith Elliott, as before that time sold and conveyed to Torquil Shaw, that defendant's land should be so located as to secure to him that quantity of land. *Page 358 
The instruction was declined; defendant excepted.
His Honor thinks it proper to add that the circumstances of the reservation of the 155 1/2 acres was pressed before the jury by defendant's counsel, and his Honor was of opinion that this was the only use that could be legitimately made of it.
3d. That at the time of making the deed, 19 July, 1855, the second line extended from figure 2 to the figure 3, that being the point where the distance gave out.
His Honor declined giving this instruction to the jury, and charged them as follows:
The corner at 2 being an admitted corner of the Torquil Shaw 155 1/2 acres, that after reaching 2 they would go the course called for, admitted to be along the marked line leading from 2, and they would also go the distance called for in the deed 45 chains to 3, where the distance gave out, unless, before getting to 3 the distance was controlled by a corner established at the making of the deed, and indicated by some natural object, as trees marked as pointers. That if from the evidence submitted to them they were satisfied that such corner existed at L, as contended for by the plaintiff, then they should stop at L, as the 3d corner of the deed.
That if they were not satisfied that L was such corner, but were satisfied from the evidence that M was the 4th corner called for as a small gum and gum pointers on the south side of the Reedy branch, with a marked line leading to it according to the course and distance (492) called for, then to ascertain the 3d corner they might reverse the line from M and the point of intersection with the line running from 2, which, according to all the surveyors, would be at L, would be the 3d corner, and the fact likewise testified to that running back from L to 2, the distance called for 45 chains would extend 7 chains beyond 2 would make no difference, they would stop at 2, which is an agreed corner.
That if they were not satisfied either in regard to L or M being such corners, then there was nothing to control the distance called for on the second line, but they would go the whole distance, 45 chains, and stop at 3 as the 3d corner.
Defendant excepted, both because his Honor declined to give the instructions asked for and because of the instructions actually given.
Under these instructions there was a verdict for the plaintiff, and from the judgment rendered thereon the defendant appealed. *Page 359 
The evidence: 1. For the reasons stated by his Honor we think the deed from Elliott and Smith to defendant, dated 4 February, 1858, was admissible evidence.
2. The testimony of Shaw was properly admitted. It would have been more forcible had the witness himself identified the tree. The fact that it was done by another witness only weakens it in degree, but does not exclude it as incompetent.
3. The same remark is applicable to the evidence as to the apparent age of the line trees from 2 to L, and from L to M, and from 1 to 2. True, direct evidence that these trees were marked at the making of the deed would have been much stronger, so if the trees had been blocked and found to correspond this natural evidence would have been stronger, but surveyors can form an opinion from the external appearance, whether trees have been recently marked, or whether it is (493) an "old marked line," so they can form an opinion whether the lines are of the same age. This furnishes natural evidence, weaker, in degree, but competent and fit to be considered by the jury.
The instructions asked for:
1st. The instruction asked in regard to the small pond was properly refused. The wording of the deed leaves it uncertain whether the line was near to the pond, but so as not to take it in, or whether the fourth line did take in the pond, and the purpose was to except it out of the land granted. Suppose the latter to be the proper construction. That would not settle the dispute between L and 3, which is "the point in the case"; for running to M, if course and distance is then to be controlled by the pond as a natural object, it will be met by a diagonal line from W to 5, thence with the branch, so that natural object will be taken in without disturbing any but the fourth line, and without touching the land in dispute.
2d. The instruction that the land must be located so as to include 155 1/2 acres, was properly refused. The defendant had all the benefit of it that he was entitled to, as a circumstance that might be considered by the jury in determining questions of boundary.
3d. The instruction asked for is covered by the charge.
His Honor told the jury that the distance called for must be observed and the line run to 3, unless the distance was controlled by a corner established at the making out of the deed and indicated by some natural object, "as trees marked as pointers." A tree marked as a corner controls *Page 360 
distance; this is settled, and the same reason applies to trees marked as pointers, to a corner at a stake, particularly where there is a marked line going off from the spot indicated according to course and distance of the third line, leading to another corner and pointers. So the only point in the case is, was there evidence for the jury as to (494) the trees marked for pointers, and as to the marked line trees? The declaration of the defendant and the other evidence certainly warranted his Honor in leaving the matter to the jury.
His Honor instructed the jury that if M was established as the fourth corner the line might be reversed so as to find the corner at the intersection with the second line. The only objection to this is that it would seem to be superflous, for it is not reversing merely the course, but here we have a line of marked trees, and supposing M to be established, it would make but little difference whether you follow the line from M to L, or went to M and followed the marked line back to L, and it could only be natural from the fact that at M a small gum was marked as a corner and gum pointers on the south side of the Reedy branch," whereas at L the call was for a stake with pointers. The main point was that at L there was a tree marked as a pointer, and that in running the next call, according to course and distance, you had a line of marked trees leading to M, another corner. Our decision is that a tree marked and called for as a pointer, with a line of marked trees leading to another corner will control distance. Our case is stronger than Safret v. Hartman, 52 N.C. 199, for here the fact of there being trees marked for pointers is set out in the deed.
The principle of controlling distance by natural objects is based on the fact that it is easier for a mistake to be made in regard to distance than in regard to a tree marked as a corner, or a tree marked as a pointer and called for in the deed, and marked line trees, so in case these several modes of description do not correspond, the less certain is to give place to the more certain.
PER CURIAM. No Error.
N. B. This case was prepared at January Term, but for want of a diagram was not reported.
Cited: Norwood v. Crawford, 114 N.C. 522.
 *Page 1