MRS. LAURA SULLIVAN v. GEORGE W. BLOUNT ET AL.

(Filed 18 February, 1914.)

1. Deeds and Conveyances—Boundaries—Evidence—Declarations.

Declarations are competent as tending to show the lines and corners stated in a deed, when the declarant is dead at the time they were offered in evidence, when made by him before a controversy had arisen as to the boundary, and when he was disinterested at the time he made them.

2. Same—Adjoining Owner—Interest.

Declarations made by an adjoining owner of lands to the locus in quo of corners and boundaries are not incompetent when not made in his own interest, and otherwise competent.

3. Deeds and Conveyances—Boundaries—General Reputation—Remoteness—Evidence.

Evidence of general reputation is competent in the location of private boundaries if the reputation had its origin at a time comparatively remote, had existed before the controversy, and attached to some monument of boundary or natural object, in this case a holly tree; and a period of forty years is held to be remote within the meaning of the law.

4. Same—Corroborative Evidence.

Where declarations of the location of a corner or boundary stated in a deed is sufficiently remote and otherwise competent, evidence of a declaration subsequently made is competent in corroboration.

**5. Deeds and Conveyances — Boundaries — General Reputation — Ownership of Lands—Evidence.**

> While evidence of reputation may be competent to locate a corner or boundary given in a deed, it cannot be admissible to prove ownership of the land.

APPEAL by defendants from *Connor, J.,* at September Term, 1913, of MARTIN.

This is an action to recover the value of certain timber trees, cut by the Plymouth Lumber Company on certain land claimed by the plaintiff Sullivan and the defendant Blount, who own adjoining tracts of land.

The real dispute, and upon which the whole case depends, is as to the location of the beginning corner of the land of the plaintiff, known as the Sandy Bottom tract, which is described in the deed as a holly, the defendant claiming that the holly is at the figure 1 on the plat, and the plaintiff that it is at the letter A, which is east of the figure 1.

The plaintiff, among other things, testified: "About forty years ago, when I was a girl, I was riding with Rev. Clayton Moore, who owned a tract of land adjoining 'Sandy Bottom,' the land defendant now owns. Rev. Moore is now dead. There was then no controversy about this beginning corner, nor the other boundaries of 'Sandy Bottom' tract, and he had no interest in the 'Sandy Bottom' tract of land. On this occasion he pointed out this holly, now claimed by me, and told me it was the corner of his land and the corner of 'Sandy Bottom' tract of land."

Defendant Blount objected, because it appeared that he owned at the time an adjoining tract of land, and that he was interested in locating the holly as the corner of his own land.

Objection overruled, and defendant Blount excepted.

She further testified: "That she knew Mr. Goodman Darden, an old man who lived in the neighborhood and owned land adjoining the 'Sandy Bottom' tract on the east. He has been dead many years; had no interest in the 'Sandy Bottom' tract; and many years ago, when there was no controversy about the beginning corner or other boundaries of 'Sandy Bottom' tract, he

pointed out to me the holly now claimed by me as the beginning corner of the Sandy Bottom tract of land and as one of the corners of his land."

The defendant Blount objected on the ground that it appeared he owned an adjoining tract of land, and was interested in locating his own corner. Objection overruled, and defendant Blount excepted.

D. Allen, a witness for plaintiff, testified: "Am 56 years old. My father, who has been dead many years and had no interest in 'Sandy Bottom' tract of land or its boundaries, and when there was no controversy about the beginning or other boundaries of 'Sandy Bottom' tract, pointed out to me the holly as now claimed by Mrs. Sullivan as the beginning corner of Sandy Bottom tract of land.. That when I can first recollect, more than forty years ago, this holly was, by common reputation in the neighborhood, known as the beginning corner of the 'Sandy Bottom' tract of land. It is an old holly, and looked forty-five years ago about as it does now. Was, when I can first recollect, marked as a corner. The marks on it were then old. My father owned land adjoining 'Sandy Bottom' tract on the east."

The defendant Blount objected because it appeared that Mr. Allen's father owned an adjoining tract of land. Objection overruled, and defendant Blount excepted.

Samuel Darden, a witness for the plaintiff, testified to declarations of his father, Goodman Darden, substantially like those testified to by the plaintiff, and further, that "over forty years ago this holly, claimed by Mrs. Sullivan, was by common reputation in the neighborhood known as the beginning corner of the Sandy Bottom tract of land."

To this testimony defendant Blount objected. Objection overruled, and defendant excepted.

W. W. Ange, a witness for plaintiff, testified: "Am 45 years of age and am a surveyor. Many years ago my father, who was a surveyor, and who is now dead, and had no interest, and when there was no controversy about the beginning or other boundaries of the Sandy Bottom tract of land, pointed out to me the holly, now claimed by Mrs. Sullivan as the beginning corner of

the Sandy Bottom tract of land. (It was the common neigh-
borhood reputation that the corner at 'A' was the corner of
Sandy Bottom and the old Duckinfield corner.)"

To the foregoing testimony in parentheses the defendants
objected; objection overruled, and defendants excepted.

The defendants requested the court to charge the jury: "If
the jury believe all the evidence, they shall answer the first
issue in favor of the defendants." This was refused, and de-
fendant Blount excepted.

There was a verdict and judgment in favor of the plaintiff,
and the defendant appealed.

*Gaylord & Gaylord for plaintiff.*
*S. A. Newell and H. W. Stubbs for defendant.*

ALLEN, J. It is well settled in this State that declarations
are competent as to the location of lines and corners when it
appears (1) that the declarant is dead at the time the declara-
tion is offered as evidence; (2) that the declaration was made
before a controversy had arisen as to the boundary; (3) that
the declarant was disinterested at the time the declaration was
made. *Sasser v. Herring,* 14 N. C., 340; *Bethea v. Byrd,* 95
N. C., 311; *Hemphill v. Hemphill,* 138 N. C., 504.

The declarations offered in evidence by the plaintiff meet
every requirement of the law, as they are declarations of de-
ceased persons, made *ante litem motam,* and the declarants not
only had no interest in the Sandy Bottom tract of land, the
boundaries of which are in controversy, but their declarations
were against interest, as it would have been advantageous to
them to establish the corner at the figure 1, instead of at the let-
ter A, as their lands were east of the land of the plaintiff, and
the letter A is east of the figure 1.

The fact that the declarant owns an adjoining tract of land
does not render the declarations incompetent (*Bethea v. Byrd,*
95 N. C., 309; *Lewis v. Lumber Co.,* 113 N. C., 55), unless made
in his own interest. *Chrisco v. Yow,* 153 N. C., 435. There is
no conflict between these authorities and *Hagaman v. Bernhardt,*
162 N. C., 381, relied on by the defendant, as in the latter case

the declaration was excluded upon the ground that the declarant was pointing out his own boundaries, and that the declaration was in his own interest.

It is equally well settled that evidence of common or general reputation is competent in the location of private boundary if (1) the reputation had its origin at a time comparatively remote, and (2) existed before the controversy, and (3) attached itself to some monument of boundary, or natural object, or is supported by evidence of occupation and acquiescence tending to give the land some fixed or definite location. *Tate v. Southard,* 8 N. C., 45; *Dobson v. Finley,* 53 N. C., 496; *Yow v. Hamilton,* 136 N. C., 357; *Hemphill v. Hemphill,* 138 N. C., 504; *Lamb v. Copeland,* 158 N. C., 138.

It is true, the expressions "remote" and "comparatively remote" are indefinite; but as said in *Lamb v. Copeland, supra,* as the principle admitting evidence of common reputation "was established of necessity, when from changing conditions and the absence of permanent monuments better evidence of boundary could not be procured, so the time may vary to some extent, as the facts and circumstances may show that the necessity does or does not exist."

In *Bland v. Beasley,* 140 N. C., 633, it was held that a reputation having its origin seventeen years before action commenced was not sufficiently remote, and in *Ricks v. Woodard,* 159 N. C., 648, the same ruling was made as to a reputation of twenty years; but it was also held in the latter case that a reputation existing for forty or fifty years was remote within the meaning of the law, and that when evidence of such reputation is introduced, it is competent to introduce evidence of a common reputation for a shorter period in corroboration.

Applying these principles, the evidence as to common reputation was competent. It had existed for forty years or more, according to one witness, and before any controversy as to boundaries, and it attached itself to a natural object—the holly. The evidence of the other witness Ange, as to reputation, does not fix the time, but he was evidently speaking of a remote period, and in any event it was competent as corroborative evidence.

It may be well to note that evidence of reputation only applies to questions of boundary, and that it is not admissible to prove the ownership of the land. *Locklear v. Paul,* 163 N. C., 338.

In other words, it is permissible, under the conditions stated, to prove the common reputation as to a corner or a line, but not as to who is the owner of the land.

The instruction prayed for was properly refused, as there was ample evidence to support the verdict in favor of the plaintiff.

No error.