L. S. HOGE and Wife, MARGARET M. HOGE, v. GUION LEE.

(Filed 20 September, 1922.)

**1. Deeds and Conveyances—Boundaries—Natural Boundaries—Evidence.**

In order to the application of the rule that where natural objects or muniments of title are called for as the boundaries described in grants or deeds, they generally control or prevail over courses and distances, it is essential that the muniments or objects relied on be identified, or their location admitted or established beyond controversy, and in this event the location may become a matter of legal interpretation.

**2. Same—Trials—Admissions—Questions of Law.**

Where muniments of title or natural objects are called for in a grant or deed to lands, the subject of the action, concerning the location of which there is a dispute between the parties upon conflicting evidence, or where the evidence tends to show two or more natural objects that may answer the description, the question of the location of the boundaries dependent thereon must be determined by the jury under the instructions of the court.

**3. Deeds and Conveyances—Boundaries—Natural Boundaries—Natural Reputation—Evidence.**

　　Where the location of the lands in dispute is dependent upon the true location of a natural boundary called for in a grant or deed under which a party to the action claims title, in this case, the location of "the head of Juniper Swamp," and there is evidence to sustain the contentions of both the plaintiff and the defendant, testimony of a witness that he had known the point, or had it pointed out to him five or seven years ago, is not competent.

**4. Same—Hearsay Evidence.**

　　Testimony as to common reputation of the location of a natural object in the description in a deed or grant of land should have its origin at a time comparatively remote, should be *ante litem motam*, and it should attach itself to some boundary or natural object, or be fortified by evidence of occupation or acquiescence tending to give the land some fixed and definite location; and evidence of such reputation extending over a period of only five or seven years, is insufficient.

**5. Same—Rule of Evidence.**

　　The restrictions on the declarations of an individual concerning private boundary are that such declarations be made *ante litem motam*, that the declarant be dead when they were offered, and that the declarant be disinterested when they were made.

**6. Same—Instructions—Admissions.**

　　The descriptions and calls in a junior grant may not be received as evidence of the boundaries of a senior grant, but a reference in a later deed to the location of land described in an older deed may, in connection with other evidence, become competent as an admission of the grantee named in the deed containing such reference.

**7. Trespass—Principal and Agent—Damages—Employer and Employee—Master and Servant.**

　　Where one has employed another to cut the timber from his own land, and the one so employed cuts timber from lands outside his employer's boundaries, ordinarily an action may be maintained against the employer for the trespass of his agent, especially when he has knowingly received a part of the consideration for the timber, or there is other evidence of his ratification of his employee's acts.

APPEAL by both parties from *Bond, J.*, at February Term, 1922, of BEAUFORT.

　　Civil action for the recovery of damages for alleged trespass on land.

　　The land in controversy is represented on the plat by the letters A, B, C, D, E, F, A. The plaintiffs contend that this land is covered by the following grants, under which they claim title: (1) a grant to Thomas A. Haughton, dated 28 June, 1902, represented by the letters C, D, E, F, 1, 2, 3, C; (2) a grant to F. H. Von Eberstein, dated 28 June, 1902, represented by F, 4, 5, 6, 7, 8, 2, 1, F; (3) a grant to Grimes and Von

Hoge *v.* Lee.

HOGE VS LEE

LAND CLAIMED BY PLAINTIFF
C.D.E.F. I.2.3.-C Grant to Thos.A.Haughton
F.4.S.6.7.8.2.I.-E  "   " F.H.VonEberstein
Hand O.P.Q.R.S.3.T.U.V.  - Grimes & VonEberstein
Location-A.T.Roe Grant X.Z & V-X.
M.W. Walker Grant X.Y. C.D.E.F.-X.
Dotted section Roe Division

LANDS CLAIMED BY DEFENDANT
A.B.C.D. E.F. to A.W.J. Walker & others to Guion Lee
X.A.B.Y. to X Grant to A.T. Roe
A.B. C.D.E.F. to A LAND IN DISPUTE

SCALE 1in = 1000ft.
Jno B. Respess
   Surveyor for Plaintiff
Duffy Toler
   Surveyor for Defendant
Feb 20th 1922

Eberstein, dated 9 January, 1902, represented by index O, P, Q, R, S, 3, T, U, V. Plaintiffs introduced a deed from the State Board of Education to W. H. Whitley and S. R. Fowle & Son, dated 1 May, 1917, for the land described in these grants, and *mesne* conveyances which need not be set out.

The defendant offered the following: (1) a grant to A. T. Roe for 84 acres, dated 17 March, 1851; (2) a deed from A. T. Roe to Martin W. Walker for 200 acres, dated 19 October, 1851; (3) a deed from W. J. Walker and others, heirs of Martin W. Walker, to the defendant, dated 25 June, 1916. Defendant also claimed possession under color of title for the requisite length of time.

Plaintiffs introduced a certified copy of the original entry (dated 12 April, 1852), map, and grant to Martin W. Walker, dated 17 June, 1853. For the purpose of aiding the location, other record evidence was introduced by the parties. The grants and deeds were admitted to have been properly drafted and executed for the conveyance of the lands therein described. The following are the issues and answers:

"1. Has the defendant Guion Lee trespassed on that part of the land described in the complaint not claimed by said Lee in his answer? Answer: 'Yes.'

"2. If so, what damages, if any, are plaintiffs Hoge and wife entitled to recover for same? Answer: '$125.'

"3. Are plaintiffs Hoge and wife owners and in possession of that part of the land described in the complaint shown on the map used in the trial as A, B, C, D, E, F, A, and being that part of land claimed by the defendant in his answer? Answer: 'No.'

"4. Has the defendant Guion Lee trespassed on said land shown on said map as A, B, C, D, E, F, A? Answer: 'No.'

"5. What damage, if any, are plaintiffs Hoge and wife entitled to recover therefor from defendant Lee? Answer: ................."

Appeal by the plaintiffs, and by the defendant.

*Daniel & Carter and Ward & Grimes for plaintiffs.*
*L. R. Varser and Wiley C. Rodman for defendant.*

### Plaintiffs' Appeal

Adams, J. The plaintiffs and the defendant contend that their respective muniments of title include the land in controversy. The plaintiffs claim under grants issued in 1902, a deed executed by the State Board of Education in 1917, and *mesne* conveyances, while the defendant asserts title under a grant acquired by A. T. Roe in 1851, and subsequent conveyances. The defendant contends that the true location of the land described in his grant and deeds is as represented on the plat by the lines

A, B, Y, X, A, and that the *locus in quo* is within these lines. On the other hand, the plaintiffs insist, among other things, that the tract described in the Roe grant contains only 84 acres, and is located as represented by the lines X, Y, &, Z, X, and that it will include between 1,400 and 1,600 acres if the western boundary is extended to A, B. Indeed, the plaintiffs contend that the Roe grant lies within the boundaries of the land granted to Martin W. Walker, and that the western boundaries of the defendant's title extend only to the line C, D, E, F, or to the eastern boundary of the *locus in quo*. It is therefore apparent that the location of the land described in the several grants and deeds was a matter of vital importance in the determination of the controversy.

The land granted to A. T. Roe is described as follows: Beginning at the mouth of Juniper Swamp, running S. 45 W. 150 poles with said branch to the head; thence S. 30 poles to the county line; thence with said line S. 45 E. 150 poles to the main run of the creek swamp; thence with the run of the swamp to the beginning. In the deed from Roe to Martin Walker, and in other record evidence, the "head of the swamp" is designated as a part of the description of the land. The plaintiffs introduced evidence tending to show that the head of the swamp was at Z, or at NN, and the defendant offered evidence tending to show the location to be at A. The materiality of evidence tending to show this location is at once evident. If the head of the swamp is at A, the Roe grant and the Roe deed include the disputed land; but otherwise, if at Z or NN. On the direct examination of Duffey Toler the defendant inquired whether A was known in that locality as the head of Juniper Swamp, and the witness answered, "Yes, sir. I have only known the very point myself, or had it pointed out to me five or seven years, and have only known the branch indicated from the letter A for the same length of time." The plaintiffs objected to the question, excepted to the admission of the evidence, and in apt time moved to strike the answer from the record, and again excepted to his Honor's adverse ruling.

That natural monuments called for as the boundaries of grants and deeds generally control or prevail over courses and distances is a rule which has been repeatedly sanctioned and applied in the adjudications of this Court. But in order to make the rule effective it is essential that the monuments or objects relied on be identified, or their location admitted. When such location is admitted, or is beyond controversy, the description may become practically a matter of legal interpretation. To this principle may be referred *Slade v. Neal,* 19 N. C., 61; *Literary Board v. Clark,* 31 N. C., 58; *Bowen v. Lumber Co.,* 153 N. C., 366, and other similar decisions. But where there is a dispute concerning the true location of a natural object called for in a grant or deed, and the evi-

dence of the adverse parties touching such location is conflicting, or where the evidence tends to show two or more natural objects that may answer the description, the boundaries must be determined by the jury under the instruction of the court. This proposition is maintained in *Brooks v. Britt,* 15 N. C., 482; *Stapleford v. Brinson,* 24 N. C., 311; *Clark v. Wagoner,* 70 N. C., 706; *Weston v. Lumber Co.,* 163 N. C., 78, and other cases familiar to the profession.

His Honor, recognizing these principles, submitted to the jury the location of the head of Juniper Swamp, and to the contention of the parties on this question, Toler's testimony was distinctly pertinent. In fact, it was a circumstance particularly to be considered in its tendency to impeach as guides to the location of the head of the swamp the courses and distances called for in the grant to Roe and in the deed from Roe to Walker. In *Tatem v. Paine,* 11 N. C., 64, *Judge Henderson* said: "Where natural objects are called for as the termini, and course and distance and marked lines are also given, the natural objects are the termini, and the course and distance and marked lines can only be resorted to by the jury to ascertain the natural objects; they act as pointers or guides to the natural object. When the natural boundary is unique, or has properties peculiar to itself, these pointers or guides can have but little effect; in fact, I believe, none. Where there is more than one natural object in the neighborhood answering the description—that is, having common qualities—then those pointers or guides may be reverted to to ascertain where the object called for is, or which is the object designated. They do not then contradict or controvert natural boundary; they explain a latent ambiguity created by there being more than one object which answers the description."

The plaintiffs' exceptions are not identical with those presented in *Waters v. Simmons,* 52 N. C., 541. There the trial judge excluded evidence which was offered to show the location of the head of Spellar's Creek. There was no evidence that more than one natural object answered the description, and apparently the identity of the creek could be definitely determined. Toler testified that the "locality" around A was known as the head of the swamp, and the objection is rested on the ground that both the question and the answer imply knowledge acquired from general reputation or from the declaration of others. By what other means was the witness qualified to say that the place was known as the head of the swamp? In this State both hearsay evidence and common reputation, subject to certain restrictions, are admissible on questions of private boundary, but common reputation should have its origin at a time comparatively remote, always *ante litem motam,* and should attach itself to some monument of boundary or natural object, or be fortified by evidence of occupation and acquiescence tending to give

4—184

the land some fixed and definite location. *Hemphill v. Hemphill,* 138 N. C., 504; *Bland v. Beasley,* 140 N. C., 629. If it be admitted that the answer elicited amounts to evidence of common reputation concerning an object definitely fixed, reputation extending over a period of five or six years is insufficient. In *Bland v. Beasley, supra,* it was held that a period of seventeen years was not "comparatively remote." It is equally clear that the answer cannot be sustained as the declaration of a person deceased. The restrictions on the declarations of an individual concerning private boundary are (1) that the declarations be made *ante litem motam;* (2) that the declarant be dead when they are offered; (3) and that he be disinterested when they are made. We think the objection of the plaintiffs should have been sustained and the evidence excluded.

Exception 49 is addressed to the following paragraph in his Honor's charge: "The court charges you that in locating the A. T. Roe grant it is not competent to consider the calls in the junior grant, or other papers of later date, for the purpose of locating this grant; and any reference to the A. T. Roe grant in the Martin Walker grant, introduced by the plaintiffs, would not be considered by you in determining the location of the A. T. Roe grant, for the purpose of confining the Roe grant to a location within the boundaries of the Martin Walker grant."

In a line of decisions extending from *Sasser v. Herring,* 14 N. C., 340, to *Lumber Co. v. Lumber Co.,* 169 N. C., 98, this Court has consistently held that the description in a junior grant is not evidence of the boundaries in a senior grant. But the exception involves another principle. His Honor withdrew from the jury not only the description or "calls" in the junior grant, but "any reference to the A. T. Roe grant in the Martin Walker grant." Martin Walker accepted his grant with the attached surveyor's plat, which was a part of it, presumably procured by the grantee, reciting the location of the grant to Roe. The jury should have been permitted to consider this circumstance, without regard to the description by course and distance, as tending to show a declaration or admission on the part of Walker circumscribing the boundaries of the Roe grant. Such admission is competent, not in favor of the grantee (*Crump v. Thompson,* 31 N. C., 491), but against him and those claiming under him. If the recital of a deed in a subsequent deed is evidence of the former against a party to the latter and those who claim under him on the ground that it operates as an admission (*Hoyatt v. Phifer,* 15 N. C., 273), why should not the recital of location in the grant or in the survey of the grantee's entry likewise be considered? *Claywell v. McGimpsey,* 15 N. C., 89; *West v. Shaw,* 67 N. C., 483; *Gaylord v. Respass,* 92 N. C., 557; *Hickory v. R. R.,* 137 N. C., 202. In like manner, this principle apparently sustains the contention that the

BASNIGHT *v.* LUMBER CO.

deeds executed by Walker to his children are evidence tending to show that he recognized the western boundary of his grant as the eastern boundary of the land claimed by the plaintiffs.

As our view of the law requires the submission to another jury of the third, fourth, and fifth issues, the remaining exceptions need not now be considered.

New trial.

## DEFENDANT'S APPEAL

ADAMS, J. The defendant's appeal from the judgment rendered on the first and second issues presents the question of his liability for alleged trespass on land situated west of the line A, B. There was evidence tending to show that the plaintiffs had title to this land; that the defendant did not claim it; and that W. J. Dunn, under a contract with the defendant, not knowing the exact location of the defendant's claim, cut timber on the western side of the line referred to. Where a servant is ordered to cut trees on his master's land and cuts some outside his master's boundaries, ordinarily an action may be maintained against the master for the trespass. 6 Labatt, sec. 2397. But here there was evidence from which the jury might reasonably infer that Dunn cut the timber in question under the defendant's authority, or, in any event, that the defendant received a part of the proceeds derived from the timber, and thereby ratified Dunn's trespass; and it is evident that the jury found as a fact, under his Honor's charge, that the defendant had either authorized or ratified Dunn's wrongful act. The motion for nonsuit and the requested instruction referred to in the seventh exception were therefore properly denied. The remaining exceptions relied on in the argument have relation to the motion and instruction which were declined by the court, and require no separate discussion. In the defendant's appeal there is

No error.