## C. L. TRIPP v. T. L. LITTLE.

(Filed 10 October, 1923.)

**1. Trespass—Possession—Landlord and Tenant—Actions.**

The plaintiff in rightful possession of land may maintain an action against a trespasser thereon, though claiming the right to such possession under the title of another.

**2. Same—Title—Parties.**

The owner of the title to lands is proper and at times a necessary party to an action of trespass brought by his tenant, or one who is in possession under him, when the wrongful invasion of the property involves an injury both to the possession and the inheritance.

**3. Same—Courts—Statutes.**

Under the provisions of our statute, the court has the power to order the owner of the title to be made a party in his tenant's action of trespass involving an injury both to the possession and to the inheritance. C. S., secs. 446, 456, 460.

**4. Same—Abatement.**

The owner of the legal title conveyed the lands to his son, and thereafter, while continuing in peaceful possession, instituted an action for trespass involving injury both to the possession and the inheritance; and after his death, pending this action, the court substituted the son as party plaintiff, under defendant's objection, who moved in abatement of the action on the ground that the original plaintiff did not own the legal title at the time of action commenced: *Held,* the motion was properly denied.

**5. Evidence—Declarations—Requisites—Ante Litem Motam—Boundaries.**

In order that unsworn declarations may be received upon the trial as evidence of the true location of a contested private boundary involving title, it is required that they must have been made *ante litem motam,* by a declarant who was disinterested when they were made, and who was dead at the time of trial: and to be competent as *ante litem motam,* they must have antedated the time when the dispute had arisen, as well as that of action commenced.

**6. Evidence—Declarations—Interest.**

Evidence that a declarant on question of boundary is a relative of one of the owners will not affect the competency of his declarations—the disqualifying interest being of a pecuniary or proprietary nature.

APPEAL by defendant from *Grady, J.,* at May Term, 1923, of PITT.

Civil action. The action is for trespass to realty and to restrain repetition of same, and was instituted by Redding Tripp, father of present plaintiff, and who remained in actual possession of the land until his death pending the action, and who had conveyed the land to his son, the present plaintiff, prior to action commenced. At the call of the cause there was motion that the action abate for that the original plaintiff, Redding Tripp, had no title at the time of action commenced. It was claimed by plaintiff that an order of court had been made several terms ago, but no such order being found, a juror was withdrawn and an order was signed presently substituting C. L. Tripp as party plaintiff, and the trial proceeded as between said C. L. Tripp as plaintiff, and defendant. The court offered parties the privilege of a continuance if taken by surprise, but both agreed to proceed with the trial, defendant noting his exception for a refusal to abate the action pursuant to his motion.

Defendant in his answer admitted that he had cut timber trees on the land specified and raised the issue of title as against plaintiffs or either of them, asserting title in himself to the land in dispute. On issues submitted the jury rendered verdict as follows:

"1. Is the plaintiff the owner of the tract of land referred to on the map and included within the lines B, C, 7, 6, 5, Z, B? Answer: 'Yes.'

"2. If not, what damages is the defendant entitled to recover of the plaintiff by reason of the issuance of the injunction in this action? Answer: '...........' "

Judgment on verdict for plaintiff, and defendant excepted and appealed, assigning for errors the refusal to allow his motion that the action abate, to certain ruling of the court on questions of evidence.

*F. G. James & Son and Skinner & Whedbee for plaintiff.*
*Louis W. Gaylord and Albion Dunn for defendant.*

HOKE, J. The action being one for trespass to realty, it is held in this jurisdiction, and is the rule very generally prevailing, that the same can be properly instituted and maintained against a wrongdoer by one in the peaceable possession of the property at the time of the wrong committed. *Lee v. Lee,* 180 N. C., 86; *Wheeler v. Telephone Co.,* 172 N. C., 9, 11; *Frisbee v. Marshall,* 122 N. C., 760; *Hayward v. Sedgely,* 14 Me., 439. And the defendant having raised the issue of title, the

original plaintiff being in under the present plaintiff, his grantee of the legal title, and the trespass involving an injury both to the possessory right and to the inheritance, the present plaintiff as ·claimant of the title is not only a permissible but a proper party to a determination of the controversy. *Balcum v. Johnson,* 177 N. C., 213; citing *Cherry v. Canal Co.,* 140 N.,C., 422; *Gwaltney v. Timber Co.,* 115 N. C., 579; *Jordan v. Barwood,* 42 W. Va., 312; *Shortle v. Terre Haute, etc. Ry.,* 131 Ind., 3218.

In *Haywood v. Sedgely, supra,* it is said: "The case in the year book, 19 Henry VI, 45, decided that a tenant at will may have an action for injury to the soil, and the landlord also, for his injury. The same rule applies to the cutting of trees. If trees are cut on the land of a tenant at will, he may have an action of trespass. Roll's Abridgment, Trespass, note 4; Comyn's Digest, Trespass, B-2. The principle is quite explicitly stated in Note 2, Coke on Littleton, 57-A, 'If a stranger cuts trees, the tenant at will shall have an action, as shall also the lessor, regard being had to their general losses.' " And *Spencer v. Weatherly,* 46 N. C., 327, is in affirmance of the general principle.

And whatever doubt may exist as to the propriety of joining these parties under the strict rules of common law procedure, under the more liberal and comprehensive provisions of our Code there can be none in our opinion that the owner may and should be joined to an action instituted by his tenant for a wrongful invasion of the property, and involving an injury both to the possession and the inheritance. C. S., secs. 446, 456 and 460, providing, among other things, for the making of such parties as are necessary to a complete determination of a controversy. On the record we are of opinion that his Honor properly refused to order an abatement and in directing that the action proceed as between the present plaintiff and defendant.

While we approve his Honor's ruling in the matter referred to, we are of opinion that defendant is entitled to a new trial of the cause for an erroneous ruling on a question of evidence. From an examination of the record it appears that plaintiff asserted and was endeavoring to maintain title under his deeds as covering the land in controversy, and in doing so it was a material question as to the true location of a certain poplar corner at B. And a witness for plaintiff, E. C. Dresbach, over defendant's objection, was allowed to state that the corner in question, at the point claimed by plaintiff, was pointed out to him as plaintiff's corner by a Mr. Cooper, a relative of plaintiff, now dead. Speaking of the time and circumstance when this occurred, the witness Dresbach said: "There is a poplar stump at point B on the map. The first time the corner at B was pointed out to me has been about twelve years ago,

as I remember, by a gentleman by the name of Cooper. I think they called him Roan. He was there when I first went there to make a survey. He was a middle-aged man. He is now dead. When I first went there to make a survey there was a question about where this line was. As I remember it, the dispute was about where the line stood between Tripp and Horton. Cooper was a relative of Mr. Tripp and I suppose he would have an interest in the matter. Of course, I am not certain of that fact. He was there on the ground and pointed out the corner."

It is fully established in this State that under proper circumstances unsworn declarations may be received in questions of private boundary, the requirements for the admissibility of such evidence being that they must have been made *ante litem motam* and by a declarant who was disinterested when made and who was dead at the time of trial. *Hoge v. Lee,* 184 N. C., 44; *Bank v. Whilden,* 175 N. C., 52; citing *Sullivan v. Blount,* 165 N. C., 7; *Lamb v. Copeland,* 158 N. C., 136, and other cases. The interest which disqualifies the declarant is a pecuniary and proprietary interest and therefore there would be no objection to these declarations of Cooper because of his relationship to the Tripps, father and son, but the statements of the witness Dresbach reveal clearly that the oral and unsworn statements of the declarant Cooper were not made *"ante litem motam,"* for this term, *"ante litem motam,"* does not apply merely to the suit then being tried, but refers also to the origin of the controversy between the parties or their predecessors in title, and which has resulted in the suit.

The position and the reason for it is stated with his accustomed learning and accuracy by our brother and former associate, *Judge Walker,* in *Rollins v. Wicker,* 154 N. C., 560-563, as follows: "The plaintiff offered to prove by the same witness what was the testimony of Joseph Buchanan (a deceased kinsman of the plaintiff) in the trial of the other case as to plaintiff's legitimacy, and that it tended to establish the fact. This evidence was properly excluded. It does not appear that the declaration of the deceased relative was made *ante litem motam.* This expression is not restricted to the date of the commencement of the present suit, but to the beginning of the controversy. In order to avoid the mischief which would otherwise result, 'all *ex parte* declarations, even though made upon oath, referring to a date subsequent to the beginning of the controversy are rejected.' This rule of evidence was familiar in the Roman law; but the term *lis mota* was there applied strictly to the commencement of the action, and was not referred to an earlier period of the controversy. But in our law the term *lis* is taken in the classical and larger sense of controversy, and by *lis mota* is understood the commencement of the controversy and not the commencement

of the suit. ·The commencement of the controversy has been further defined by Mr. Baron Alderson, in a case of pedigree, to be 'the arising of that state of facts on which the claim is founded, without anything more.' 1 Greenleaf on Evidence, sec. 131. The value of this kind of evidence depends upon its being drawn from an unbiased source, and it should emanate from those in a situation favorable to a knowledge of the truth, and, what is a very important consideration, it should refer to a period 'when this fountain of evidence was not rendered turbid by agitation.' Section 132."

From the accompanying statements of the witness Dresbach, it appears that though made twelve years before, a controversy then existed as to the true location of this line between the Tripps, who owned plaintiff's title, and Albert Horton, under whom defendant immediately claimed. For this error there must a new trial of the case, and it is so ordered.

New trial.