### W. VANCE BROWN ET AL. v. T. AARON BUCHANAN.

#### (Filed 14 December, 1927.)

**1. Reference—Objections and Exceptions—Issues—Trial by Jury.**

A party duly and aptly excepting to an order of reference, and also to the admissions of evidence before the referee, and submitting issues, secures his right thereby to a trial by jury upon the issues presented by him.

**2. Evidence—Boundaries—Common Reputation—Hearsay.**

Where it is agreed by the parties that the establishing of a beginning point should control the right of the plaintiff to mine upon the lands in dispute, the testimony of a surveyor to establish the true location of this point, based upon declarations of common reputation, is admissible as hearsay, unless in accordance with the requisites that they existed before the trial, had their origin at a time comparatively remote, were

made *ante litem motam*, attached to some monument of boundary or natural object, or fortified by evidence of occupation and acquiescence tending to give the land some definite and fixed location.

3. **Jury—Evidence—Appeal and Error—Reversal.**

Where the rights of the parties to the action are made to depend upon the true location of a boundary line of lands, it is reversible error for the trial judge, without consent of the appellant, to permit the jury to take into the jury room with them, to aid in their deliberations of the issue, certain relevant maps, etc., that had been introduced in evidence. *Nicholson v. Lumber Co.*, 156 N. C., 59, cited and approved; *Gooding v. Pope, ante*, 404, as to comparison of handwriting cited and distinguished. C. S., 1784, not applying.

APPEAL by plaintiffs from *Moore, J.*, at July Term, 1927, of MITCHELL. New trial.

Action involving title to mineral interests in a tract of land, situate in Mitchell County, and described in the complaint.

Only one issue was submitted to the jury. It was answered as follows:

"Are the plaintiffs in the above-entitled action the owners and entitled to the possession of the mineral interests in and to the boundary of land described in the complaint? Answer: No."

From judgment on the verdict plaintiffs appealed to the Supreme Court.

*John W. Ragland, Lambert & Lambert and Merrimon, Adams & Adams for plaintiffs.*
*McBee & Berry and Pless, Winborne, Pless & Proctor for defendant.*

CONNOR, J. At July Term, 1924, this action, then pending in the Superior Court of Mitchell County, was referred by the judge presiding for trial. C. S., 573, subsection 3. The order of reference was made, notwithstanding the objection of defendant, who duly excepted thereto. Defendant was, therefore, not deprived of his constitutional right to a trial by jury of the issues of fact arising upon the pleadings. *Lumber Co. v. Pemberton*, 188 N. C., 532. When the report of the referee, to which exceptions had been duly filed by the defendant, came on for hearing, defendant tendered issues to be submitted to the jury upon such trial.

At the trial plaintiffs offered in evidence State Grant No. 2148, to William Cathcart, dated 20 July, 1796, and duly recorded in Mitchell County. Plaintiffs claimed under this grant. A map, made under an order of the court, and showing the contentions of the parties, was also introduced as evidence.

The following agreement was thereupon entered into by and between counsel representing plaintiffs and defendant, and made a part of the record as a stipulation for the trial of this action:

"It is agreed that if plaintiffs shall establish, by the greater weight of the evidence, the beginning corner of the grant to William Cathcart, No. 2148, at the point marked 'walnut' near the mouth of Gouges Creek, then it is admitted that the black line, A, B, C, D, and F, is the correct location of the line claimed by plaintiffs under Grant No. 2148, and also that the land described in the complaint is included in the boundary of said grant, and that, in such event, the plaintiffs are the owners of such interest as passed by said grant; and it is further admitted that Grant No. 2148 is known as the 'Brown Speculation 99,000-acre grant'; and it is admitted that if the plaintiffs fail to establish their beginning corner as just stated, or if the beginning corner shall be established at the place marked 'walnut' on the court map, the junction of the red line with the river, then the grant under which the plaintiffs claim does not cover the land in controversy."

The answer to the issue submitted to the jury was thus made to depend upon the location of the beginning point in the description of the land contained in the Cathcart Grant.

Plaintiffs offered evidence tending to show that said beginning corner is at the mouth of Gouges Creek, at the point marked "walnut" on the map; defendant offered evidence tending to contradict plaintiffs' evidence and to show that said beginning corner is at the point marked "walnut, 3 old corners," on the map.

R. L. Wiseman, one of the court surveyors, on his cross-examination by plaintiffs, as a witness for defendant, testified that "old man Sheriff Wiseman" told him, while on the survey, that the corner of the grant was at the mouth of Gouges Creek, and that some said it was at one place and some said that it was at another. On his redirect examination this witness was asked the following questions:

"Q. Who told you that the line was over on the other ridge? A. Mr. Filmore Rose and a number of fellows there in the mines.

"Q. Who else, do you recollect? A. Mr. John English, the son of Isaac English, and a brother of Mrs. Wiseman, who was on the stand this morning.

"Q. If the speculation line ran as they contend, or as the plaintiffs now contend, were they mining inside the speculation line? A. They were right on the line. They had mined above it and below it, and all through there. They stopped me and I went out.

"Q. Who did you hear say anything about the oaks on the Bald? A. I have heard it rumored that was the corner of the speculation line.

"Q. Is there any general reputation in that community as to the location of the speculation line on the Balds? Under such reputation, where is the location of the speculation line with relation to the Big Bald, on the Little Bald? A. On the west side of the Big Bald, between the Balds, but more on the west side of the Big Bald."

The witness further testified that he knew of no one, now dead, who had ever made statements to him in regard to the location of the beginning corner, called for in the grant.

Plaintiffs' assignments of error based upon exceptions, noted in apt time, to the foregoing questions and answers, must be sustained.

Declarations with respect to the location of lines and corners, or with respect to general reputation as to such location when offered in evidence, are "hearsay," and as such are inadmissible upon an issue involving such location, unless brought clearly within the exceptions to the rule excluding "hearsay" as evidence.

In *Pace v. McAden,* 191 N. C., 137, *Adams, J.,* says: "The requirements for the admission of unsworn declarations are that the declaration be made *ante litem motam,* that the declarant be disinterested, when it is made, and that he be dead, when it is offered in evidence." *Tripp v. Little,* 186 N. C., 215; *Sullivan v. Blount,* 165 N. C., 7; *Hemphill v. Hemphill,* 138 N. C., 504. The grounds upon which this exception to the rule excluding hearsay as evidence is based, are stated and discussed by *Merrimon, J.,* in *Bethea v. Byrd,* 95 N. C., 309, which has been frequently cited and approved by this Court.

In *Hoge v. Lee,* 184 N. C., 44, *Adams, J.,* says: "In this State both hearsay evidence and common reputation, subject to certain restrictions, are admissible on questions of private boundary, but common reputation should have its origin at a time comparatively remote, always *ante litem motam,* and should attach itself to some monument of boundary or natural object, or be fortified by evidence of occupation and acquiescence tending to give the land some fixed and definite location." This principle is also stated by *Allen, J.,* in *Sullivan v. Blount,* 165 N. C., 7, in the following words: "It is equally well-settled that evidence of common or general reputation is competent in the location of private boundary, if (1) the reputation had its origin at a time comparatively remote, and (2) existed before the controversy, and (3) attached itself to some monument of boundary, or natural object, or is supported by evidence of occupation and acquiescence tending to give the land some fixed or definite location."

It was error to admit as evidence the testimony of the witness Wiseman with respect to the unsworn declarations of persons as to the location of the corner in controversy, or as to general reputation of lines and boundaries, tending to locate said corner, in the absence of evidence

establishing the facts upon which such testimony was admissible under the exceptions to the rule excluding such testimony. In view of the stipulation between counsel, this error was especially prejudicial, and entitles plaintiffs to a new trial.

With respect to the remaining assignment of error appearing in the record, based upon plaintiff's exception to the action of the court, in permitting the jury to take the certified copy of the warrant of survey, with the map attached, into the jury room, and to retain same while engaged in their deliberations, it is sufficient to cite *Nicholson v. Lumber Co.,* 156 N. C., 59. In the opinion in that case, *Hoke, J.,* says: "While we uphold the action of the court on the question suggested, the plaintiff is entitled to a new trial by reason of another exception duly entered, for that the court, over plaintiff's objection, allowed the jury to take this plat and certificate to their room and inspect the same in their deliberations. This is contrary to our practice and has been condemned in several decisions of this Court." See cases cited.

Our decision upon the appeal in *Gooding v. Pope, ante,* 404, 140 S. E., 21, is not an authority upon the question here presented. In that case the papers sent by the court to the jury room, over defendant's objection, and upon the request of the jury, were admissible in evidence under the statute, C. S., 1784. This statute was enacted to change the rule at common law, theretofore followed in this State, with respect to the admission of writings for the purpose of comparing handwritings. The distinction between that case and the instant case is, we think, apparent. Upon the authority of *Nicholson v. Lumber Co., supra,* plaintiffs' assignment of error with respect to the sending of the certificate and map to the jury room is sustained. Plaintiffs are entitled to a

New trial.