STATE v. A. P. STEPHENSON.

(Filed 9 October, 1940.)

1. **Criminal Law § 52b—**

   A motion for judgment as of nonsuit should be denied if there is any evidence tending to prove the fact in issue, or which reasonably conduces the conclusion of guilt as a fairly logical and legitimate deduction, but evidence which merely raises a suspicion or conjecture of the fact of guilt is insufficient to be submitted to the jury. C. S., 4643.

2. **Perjury § 1c—Elements of offense of making false or fraudulent claim upon insurance policy.**

   The gravamen of the offense defined by C. S., 4369, as rewritten in Public Laws of 1937, chapter 248, is the willfully and knowingly presenting a false or fraudulent proof of claim for a loss upon a contract of insurance; and in a prosecution thereunder the burden is upon the State to prove that the claim for loss was false, that defendant knew it was false, and, with such knowledge, proceeded to make the claim.

3. **Criminal Law § 2—**

   The word "willfully" as used in a criminal statute means more than an intention to commit the offense; it implies committing the offense pur-

posely and designedly in violation of law; and the word "knowingly" means that the defendant with knowledge of what he is about to do proceeds to do the act proscribed; and the phrase "willfully and knowingly" means intentionally and consciously committing the offense.

**4. Perjury § 3—Evidence held to raise only conjecture or suspicion that defendant willfully and knowingly made false claim on fire insurance policy.**

 The evidence tended to show that defendant stated he had 4,600 sticks of his tobacco burned, while in his complaint in his civil action against insurer on the contract of fire insurance, which complaint was admitted in evidence in the criminal prosecution without objection, defendant alleged that the barn that was burned contained approximately 10,100 sticks of tobacco of the reasonable market value of "not less than" the amount of his claim. *Held:* Since the complaint alleged that the 10,100 sticks had a market value of "not less" than the amount claimed, without evidence as to how much more the tobacco in the barn was worth, the evidence raises a mere speculation or conjecture that the claim of the value of the tobacco burned was false, that defendant knew it was false, and with such knowledge proceeded to make the claim, and defendant's motion to nonsuit should have been granted.

**5. Criminal Law § 57—**

 Defendant moved to set aside the verdict for that the jury, without defendant's consent, took into its room the complaint in a civil action relating to the subject matter of the prosecution, which had been admitted in evidence without objection, C. S., 533, and typed notes of the argument of counsel for the prosecution containing reference to defendant's failure to testify, C. S., 1799. *Held:* In the absence of defendant's consent, it was error to permit the jury to take such papers into the jury room and retain same while in its deliberations, and defendant's motion to set aside the verdict should have been allowed.

APPEAL by defendant from *Thompson, J.,* at June Term, 1940, of JOHNSTON.

Criminal prosecution tried upon indictment found at March Term, 1940, of Superior Court of Johnston County, charging the defendant in separate counts with (1) willfully and knowingly presenting a false and fraudulent claim, and false and fraudulent proof of such claim, for the payment of a loss upon a contract of fire insurance on cured leaf tobacco, C. S., 4369, as amended by Public Laws 1937, chapter 248; and (2) feloniously burning his tobacco packhouse with fraudulent intent to collect insurance.

To each charge the defendant pleaded "Not guilty."

Upon the trial below, at the close of evidence for the State, motion of defendant for judgment of nonsuit on the second count was allowed, C. S., 4643, and the trial continued as to the charge in the first count, to wit:

That defendant "did unlawfully and willfully, wantonly and feloniously, knowingly present and caused to be presented a false and fraudu-

lent claim and false and fraudulent proof of claim, in support of said claim, upon the payment of a loss on a fire insurance contract of insurance and did subscribe and make affidavit to a false and fraudulent proof of loss, in writing, with intent that the same should be presented and used in support of such claim to the profit of the said A. P. Stephenson, said claim for loss being for destruction by fire of certain leaf tobacco alleged in said claim and proof to be of the value of $2,882.79 . . ."

Evidence offered by the State in regard to the first count tended to show substantially these facts: On 1 August, 1939, defendant obtained from Allemania Insurance Company of Pittsburgh, Pa., through its agency at Dunn, N. C., a policy of fire insurance for $3,000.00 covering cured leaf tobacco, grown, and in pack barn on lands owned by him and his wife, in Johnston County. The packhouse and contents were destroyed by fire about 11:30 p.m. on 16 August, 1939. The policy of fire insurance was in effect at that time. On the morning of 17 August, about 8:30 o'clock, defendant went to office of agent of insurance company and reported the loss and "said he had already consulted three attorneys to look after his claim and he meant business."

On 5 October, 1939, defendant made proof of loss to the insurance company, in which among other things not essential to consideration of this appeal, he stated that there has been no change in ownership or assignment of the tobacco except 2,536 sticks to I. B. McLamb; and that the cash value of the tobacco at the time of fire, and loss and damage, were $2,882.79. The proof was sworn to and subscribed by defendant before a justice of the peace.

The State offered further evidence: The witness Willard Gordon, who was visiting daughters of defendant at his home at the time fire was discovered, testified: "We all went to it . . . the building was on fire all over when I first saw it. . . . I did not see any tobacco in the packhouse. . . . There were three doors to the packhouse and they were open during the fire. . . ." Then on cross-examination, he continued: "I did not see any tobacco in the packhouse at the time of the fire because you couldn't tell whether there was any tobacco in the house or not due to the fire and smoke. I don't know how much tobacco was in the barn when it burned."

The witness Sam McGee, who went to the fire, testified: "The whole building was on fire at that time and I could not tell whether there was any tobacco in the barn or not. . . . I could not tell anything about how much if any tobacco was in the barn during the fire, for you couldn't see for the smoke and fire." He further testified that while the fire was raging he heard the defendant "say that he had lost the best of his crop of tobacco, and as best I can remember he said there were 4,600 sticks of his crop burned."

The witness Willard Gordon swore that he heard defendant make such statement to McGee.

The State's evidence also tended to show that at the time of the fire defendant had two tobacco barns full of tobacco curing near the fire. There was evidence also to the effect that defendant "had 15 or 16 acres of good tobacco that year," as Gordon expressed it. McGee's opinion was, "15 acres of fair tobacco that year," and again, that he "had a good crop of tobacco and might have had 16 acres." Neither of the witnesses for the State knew how many times defendant had barned, but each knew that McLamb had hauled some tobacco away, three or four loads McGee thinks, but does not know how many sticks were carried to the load.

Also the witness Willard Gordon, when first on the stand, testified: "I do not recall hearing Myrtle Stephenson say that there wasn't any tobacco in the packhouse, and Purvis replying to keep her damn mouth shut about that." But, on being recalled, he stated: "I heard a conversation between Purvis Stephenson and Myrtle Stephenson in which Myrtle said: 'There wasn't much tobacco in the barn,' and Purvis Stephenson, the defendant, replied: 'Keep your mouth shut about that.'"

State's witness Clyde Andrews testified that he worked with defendant that year and on having trouble left on 5 August; that defendant had 15 acres of tobacco and he had one; that when he left "we had barned four times and put it all in the packhouse with the exception of what Mr. I. B. McLamb hauled and one load carried to Smithfield to be graded; that he had 575 sticks in the barn when he left; that defendant's "girls also had an acre and they packed theirs in the barn too," but that he did not know how much tobacco was in the barn at the time of the fire.

The State also introduced without objection the verified complaint which defendant had filed on 25 November, 1939, in a civil action instituted by him in Superior Court of Johnston County against the Allemania Fire Insurance Company of Pittsburgh, seeking to recover on the policy of fire insurance and in which it is alleged "that said barn contained approximately 10,100 sticks of cured tobacco, and which was stored in said barn, all, belonging to the plaintiff, and being the identical tobacco described in said insurance policy; that the tobacco described was of high quality, and the average weight of each stick was not less than one and three-fourths pounds; that at the time said tobacco was destroyed by fire the reasonable market value for the same was not less than $2,882.79, based on the market average, at the time, in this part of the State. That the tobacco destroyed consisted of the entire crop grown on fifteen acres of land except 2,536 sticks of primings which was stored with I. B. McLamb in the town of Benson."

At close of evidence for the State, motion of defendant for judgment of nonsuit on both counts, C. S., 4643, was allowed as to second count of burning packhouse, but denied as to the first count. Exception by defendant.

Defendant offered evidence tending to show that he had 16 acres of "good, 'unusually good' tobacco," that would average "about 1,000 pounds to the acre" "at least"; that Clyde Andrews had one acre and defendant's daughters one acre; that he had two barns in which to cure his tobacco— one a "16-foot barn" that would take care of about 800 sticks, and the other a "20-foot barn" that would take care of about 1,200 sticks; that he had barned six times when the fire occurred and was "through with the exception of the tips," which were put in another barn; that as fast as the tobacco was cured it was put in the packhouse; that at the time of the fire all of defendant's tobacco crop, as well as that of daughters and of Clyde Andrews, was in the packhouse with the exception of 4,426 pounds which had been delivered to I. B. McLamb, and hauled to Smithfield.

Charles Beasley, witness for defendant, who after testifying that he had been helping defendant barn tobacco for two or three weeks, said: "I know that all his tobacco was in the packhouse the night of the fire with the exception of 4,000 pounds Mr. McLamb got. On the evening of the fire I went into the pack barn to eat my lunch and all his crop of tobacco was in there. I know that it was not moved before the fire and was burned in the fire. I do not know exactly how many sticks was there but to the best of my judgment I am sure there was as much as 6,000 sticks. I know that Mr. Stephenson didn't burn the barn because I was there that night when he come."

I. B. McLamb, testifying in behalf of defendant, said: "I furnished the labor for handling the crop. The tobacco I received averaged about 18c per pound, and it was not as good as the balance of his crop as it was the first primings, or sand lugs."

Defendant rested his case and renewed motion for judgment of nonsuit at close of all the evidence. Motion denied. Exception.

Verdict: "Guilty as charged in first count of said indictment."

In addition to moving to set aside the verdict on grounds that it is contrary to law and the evidence, defendant moved that the verdict be set aside for that, without his knowledge and consent, or that of the court, the jurors carried to their room and used in their deliberation the complaint in the civil action, which had been offered in evidence by the State, and a yellow sheet of paper on which was typed a synopsis of the argument of counsel for private prosecution, and the State's contention forming or being a basis for a part of the State's case under C. S., 4369. The court considered the same and heard testimony of two jurors

to the effect, *inter alia,* that the complaint was referred to by the jury. The notes of counsel, after giving synopsis of his argument on evidence offered by the State, and his own calculations thereon and deductions therefrom, concludes with the statement: "The man who knows it all has not taken the stand." Then after his synopsis of evidence as to "fraud as shown wholly by defendant's witnesses," and further calculations and deductions, concludes with the statement: "7. Man who knows did not open his mouth. Truth flows; would get on house top."

The court finds that at the close of argument of counsel, who was prosecuting the case on behalf of the State, he inadvertently handed to the jurors, or one of the jurors who was trying the case, the documents in question, and that the jury, after hearing the charge of the court, carried them to the jury room; and that while some members of the jury examined the complaint, and one may have read one paragraph of it, the jury gave no consideration to the other papers and did not take into consideration any part of the exhibits in arriving at the verdict. Motion to set aside verdict denied. Exception.

Judgment: Confinement in the Johnston County jail, to be assigned to work on the public roads for a period of 18 months. Defendant appeals to Supreme Court and assigns error.

*Attorney-General McMullan and Assistant Attorneys-General Bruton and Patton for the State.*
*J. R. Barefoot and Wellons & Wellons for defendant, appellant.*

WINBORNE, J. Defendant, in the main, stresses for error, and properly so, the refusal of the court: (1) to grant his motions under C. S., 4643, for judgment of nonsuit on the first count; and (2) to set aside the verdict for that the complaint in civil action and synopsis of argument of counsel, who was prosecuting the case on behalf of the State, were handed to and taken by the jury to its room upon retiring to deliberate upon the case.

1. In considering motion for judgment of nonsuit under C. S., 4643, the general rule as stated in *S. v. Johnson,* 199 N. C., 429, 154 S. E., 730, and in numerous other decisions of this Court is that "if there be any evidence tending to prove the fact in issue, or which reasonably conduces to its conclusion as a fairly logical and legitimate deduction, and not merely such as raises a suspicion or conjecture in regard to it, the case should be submitted to the jury." But where there is merely a suspicion or conjecture in regard to the charge in the bill of indictment against defendant, the motion for judgment of nonsuit will be allowed. *S. v. Johnson, supra,* and cases cited.

The charge in the first count is made under the provisions of C. S.,

4369, as rewritten in Public Laws 1937, chapter 248. This statute prescribes punishment for "Any person who shall willfully and knowingly present or cause to be presented a false or fraudulent claim, or any proof in support of such claim, for the payment of a loss, or other benefits, upon a contract of insurance; or prepares, makes or subscribes to a false or fraudulent account, certificate, affidavit or proof of loss, or other document or writing, with intent that the same may be presented or used in support of such claim. . . ." The gravamen of an offense under this statute is the "willfully and knowingly" presenting "a false or fraudulent claim," or false or fraudulent proof of claim "for the payment of a loss, upon a contract of insurance."

The word "willfully" as used in this statute means something more than an intention to commit the offense. It implies committing the offense purposely and designedly in violation of law. *S. v. Whitener,* 93 N. C., 590; *Foster v. Hyman,* 197 N. C., 189, 148 S. E., 36. The word "knowingly" as so used, means that defendant knew what he was about to do, and, with such knowledge, proceeded to do the act charged. These words combined in the phrase "willfully and knowingly" in reference to violation of the statute, mean intentionally and consciously. As used in the present indictment it means that defendant for purpose of collecting insurance intentionally made a false claim as to the value of the tobacco burned, with knowledge and conscious of the fact that the claim was false and fraudulent. The burden was on the State to offer evidence tending to show, or from which the jury might reasonably infer, that the claim for the value of the tobacco burned was false, and that defendant knew it was false, and, with such knowledge, proceeded to make claim for payment of insurance thereon.

Applying these principles, does the evidence offered meet these requirements? We do not think so. We are of opinion that the evidence does not rise above the dignity of conjecture or suspicion—if so much may be conceded.

In the proof of loss filed by defendant he asserted that the cash value of the tobacco burned was $2,882.79. In the complaint in the civil action, though forbidden by statute to be used against defendant, C. S., 533, yet admitted in evidence, without objection, defendant alleges that the value of the tobacco burned was $2,882.79. It is true that there is oral testimony to the effect that defendant said that "there were 4,600 sticks of his crop burned," and that in the civil complaint he alleges "that said barn contained approximately 10,100 sticks of cured tobacco," of the reasonable market value of "not less than" $2,882.79.

From this evidence the State argues that if 10,100 sticks of tobacco had reasonable market value of $2,882.79, then 4,600 sticks would have been worth only a proportionate part of that amount, and that if the

jury should find that defendant's statement that 4,600 sticks is the amount he had, the jury might reasonably find that defendant knew he was making a false claim. This argument loses sight of the allegation that the market value of the "approximately 10,100 sticks" had the reasonable market value of "not less than" $2,882.79. As to how much more, there is no evidence. These are contentions that may be logical in the debate on the trial of the civil action, but are not of sufficient certainty to justify the conviction of the crime charged against defendant.

2. In regard to the exception of defendant to the action of the court in refusing to set aside the verdict because of the fact that the jury took into its room the complaint in the civil action, and a sheet of paper on which was typed a synopsis of the argument of counsel for the State, as indicated in the statement of facts, even though the decision here turns on another point, we deem it opportune to call attention to these pertinent decisions of this Court: *Watson v. Davis,* 52 N. C., 178; *Burton v. Wilkes,* 66 N. C., 604; *Williams v. Thomas,* 78 N. C., 47; *Posey v. Patton,* 109 N. C., 455, 14 S. E., 64; *Nicholson v. Lumber Co.,* 156 N. C., 59, 72 S. E., 86; *S. v. Caldwell,* 181 N. C., 519, 106 S. E., 139; *Brown v. Buchanan,* 194 N. C., 675, 140 S. E., 749.

These cases settle the principle that without consent of parties it is error to permit the jury to take such papers into the jury room, and to retain same while in its deliberations. In the present case the papers taken have especially objectionable features: (1) The statute, C. S., 533, provides that "No pleading can be used in a criminal prosecution against the party as proof of fact admitted or alleged in it." Though the complaint was admitted in evidence, without objection, which amounted to waiver of objection thereto, *S. v. Mitchell,* 119 N. C., 784, 25 S. E., 783; *S. v. Hartsfield,* 188 N. C., 357, 124 S. E., 629; *Cameron v. McDonald,* 216 N. C., 712, 6 S. E. (2d), 497, it was not permissible for the jury to take it into the jury room without the consent of defendant, or of his counsel. (2) The notes of the argument of counsel were not evidence and, in fact, contained memoranda or argument bearing upon the failure of defendant to testify. C. S., 1799.

The judgment below is

Reversed.