18039

James L. COLLINS, Plaintiff-Appellant, v. James Monroe JOHNSON, Defendant-Appellant, and Queen City Coach Company, Defendant-Respondent.

(130 S. E. (2d) 185)

114

*Messrs. James P. Mozingo, III, D. Kenneth Baker* and *E. E. Saleeby,* of Darlington, *for Appellant,*

*Messrs. McEachin, Townsend & Zeigler,* of Florence, *for Respondent and Defendant-Appellant,*

*Messrs. James P. Mozingo, III, D. Kenneth Baker* and
*E. E. Saleeby,* of Darlington, *for Appellant, in Reply,*

March 13, 1963.

Moss, Justice.

It appears from the record that on May 6, 1961, a passenger bus owned by Queen City Coach Company, the respondent herein, and operated by James Monroe Johnson, an appellant herein, was in collision with an automobile owned and operated by James L. Collins, an appellant herein, on U. S. Highway No. 52 between Society Hill and Darlington, South Carolina, resulting in property damage to the passenger bus of the respondent and property damage and personal injuries to the appellant Collins.

Queen City Coach Company, on September 27, 1961, instituted an action in Florence County against James L. Collins to recover for damage done to its bus in said collision, allegedly resulting from his actionable negligence and willfullness. Collins filed an answer in said action denying that he was guilty of negligence or willfullness in the operation of his automobile. He further alleged that even if he were negligent or willful that the damage to the bus of the respondent was caused by the sole negligence of the driver thereof and that such driver was guilty of contributory negligence and willfullness. Collins did not counterclaim in said action but along with his answer he did serve

a notice of a motion for a change of venue to Darlington County.

James L. Collins, on February 20, 1962, instituted an action in Darlington County against the respondent and James Monroe Johnson, agent and servant of the respondent, to recover damages to his automobile and for his personal injuries allegedly resulting from the actionable negligence and willfullness of Johnson acting in the scope of his employment as driver of said bus.

The respondent, on March 7, 1962, moved to abate the Darlington County action brought by Collins against it on the ground that an action had been previously commenced by it against Collins in the Court of Common Pleas for Florence County, arising out of the identical accident that is the subject of Collins' complaint, and that any counterclaim by Collins against the respondent must be asserted by way of counterclaim in the action pending in Florence County, and if Collins desires he can bring in James Monroe Johnson as a party in that action and counterclaim against him.

When the motion of the respondent to abate came on for hearing before the Circuit Court, by agreement of counsel, a similar motion was made and heard in behalf of James Monroe Johnson.

Judge James A. Spruill, Jr., by his order dated March 22, 1962, sustained the plea in abatement made by respondent but denied the motion for abatement as made by James Monroe Johnson. In said order the Court found that the parties agreed that Collins could have filed a counterclaim in the Florence County action and could have likewise interpleaded Johnson and filed a cross complaint against him. Collins and Johnson have appealed to this Court from the aforesaid order.

The question for determination is whether the Court below erred in granting the motion of the respondent to abate the Darlington County action and to require the

appellant Collins to file a counterclaim in the Florence County action. The practical question for determination is where an action for damages arising by tort from a collision between automobiles has been instituted by one of the parties he may successfully plead the pendency of this action in bar to a later action brought against him by the opposing party in another county and have it abated, thereby requiring the defendant in the prior action, plaintiff in the second action, to set up his claim for damages by way of counterclaim in the prior action.

Counsel for the respondent contends that Section 10-652 of the Code, in a factual situation as the record here develops, provides for a mandatory counterclaim and does not afford the appellant, who was first sued, the alternative of filing a counterclaim or filing an independent action. It is the position of the appellant Collins that this section is not mandatory and that the party first sued has the option as to whether he will file a counterclaim or an independent action. The appellant relies on Section 10-705 of the Code which deals with counterclaims in tort actions.

This Court has said in a number of cases that one of the primary purposes for adopting the Code system of pleading was to avoid, as far as possible, a multiplicity of suits, and to enable parties to determine their differences in one action, thereby achieving resolution in a single law suit of all disputes arising out of common matters. *Coastal Produce Ass'n. v. Wilson,* 193 S. C. 339, 8 S. E. (2d) 505; *Victor Fertilizer Co. v. Southern Railway Company et al.,* 202 S. C. 294, 24 S. E. (2d) 499. The question arises as to whether the Code sections above referred to have, under the facts here admitted, accomplished this laudable purpose.

Section 10-705 of the Code provides:

"In all actions sounding in tort the defendant shall have the right to plead a similar cause of action against the plaintiff by way of counterclaim if the cause of action of

the plaintiff and defendant arise out of the same state of facts."

Section 10-652 of the Code provides:

"The answer of the defendant must contain:

(1) A general or specific denial of each material allegation of the complaint controverted by the defendant or of any knowledge of information thereof sufficient to form a belief; and

"(2) A statement of any new matter constituting a defense or counterclaim in ordinary and concise language without unnecessary repetition."

The appellant Collins relies on the construction of Section 10-652 of the Code as is contained in the concurring opinion of Justice Woods in the case of *Kirven v. Virginia-Carolina Chemical Company,* 77 S. C. 493, 58 S. E. 424, 426. The main opinion was by Justice Gary with Justice Woods filing a special concurring opinion. In this opinion he interprets Section 10-652 of the Code as follows:

"* * * All that this means is that any paper purporting to be an answer must contain either a denial of a material allegation of the complaint or new matter constituting a defense or a counterclaim, or it will be no answer. It cannot in any view be considered a legislative enactment that any separate cause of action which might have been, but was not, used as a counterclaim, shall not be available in a separate action."

Chief Justice Pope filed a dissenting opinion in which his interpretation of the statute in question was the opposite of that of Justice Woods. It is thus apparent that Justice Woods considered the statute to be permissive as to the filing of a counterclaim, while Chief Justice Pope considered it to be mandatory. His language is as follows:

"* * * Attention is called to this for the purpose of emphasizing the word *'must'* in the act now under consideration. The Legislature having used the term, this court must take for granted that it was used advisedly and

for the purpose of remedying some existing evil. It has no authority to hold that the term was used inadvertently. The act also provides that the defendant may set up as many defenses or counterclaims as he has, however inconsistent they are with each other. This is to give him the benefit of all his claims. Construing this clause with the whole act the strong implication is, if he fails to set up any one of his defenses or counterclaims, he is after judgment precluded from again asserting what might have been his right. This is the only construction consistent with the mandatory injunction as to what the answer shall contain. Of course, it does not apply to defenses or claims not included in the statute. The law gives the defendant an opportunity, but does not attempt to compel him to take advantage of it; that is, it does not attempt to say that he shall set up all of his claims and defenses. Under our statute one action makes a finality. Pomeroy in his work on Remedies (section 804) says, in the absence of statutory provision, it is not necessary to plead counterclaims in defense. Impliedly, however, where statute does require it, all claims and defenses must be set up."

It is provided in Section 10-703 of the Code that the counterclaim mentioned in Section 10-652 of the Code must be one existing in favor of a defendant against a plaintiff between whom a several judgment might be had in the action and arising out of one of the following causes of action: "(1) A cause of action arising out of the contract or transaction set forth in the complaint as the foundation of plaintiff's claim or connected with the subject of the action; * * *." Section 10-704 of the Code gives the defendant the right to set forth by answer as many defenses and counterclaims as he may have whether they be such as have been heretofore denominated legal or equitable, or both. Section 10-705 of the Code makes it clear that where an action in tort is brought, the defendant *shall have the right* to assert a counterclaim in the event the cause of action of the plaintiff and the defendant arise out of the same state of facts.

By statute, in many States, all matters available as a counterclaim must be interposed as such or relief by separate suit will be barred. The actions brought by the appellant and respondent arise out of the same state of facts. This being true, if under our Code the appellant was required to assert a mandatory counterclaim, then the order of the Trial Judge abating the second action was correct. However, if our Code provides for a permissive counterclaim, then the order of the lower Court was erroneous.

On March 1, 1870, the General Assembly of this State enacted into law statutes having to do with pleadings in civil actions. Chapter III of Title VI, 14 Stats. 460, had to do with "The Answer" and Sections 172 and 173 therein have now been divided and codified as Sections 10-652, 10-703 and 10-704 of the 1952 Code of Laws.

The General Assembly of this State, at its 1920 session, 31 Stat. 748, approved "An Act to Allow Defendants in Actions Sounding in Tort to Plead a Similar Cause of Action Against the Plaintiff by Way of Counterclaim When Cause of Action Arises Out of the Same State of Facts." This Act became effective on February 12, 1920, and appears in the 1952 Code of Laws of this State as Section 10-705.

What did the General Assembly intend when it used the word "allow" in the title of the Act and the words "shall have the right" in the body of the Act in according to a defendant the right to plead a similar cause of action against the plaintiff, by way of counterclaim, if the cause of action of the plaintiff and the defendant arose out of the same state of facts? The word "allow" is apparently used in the statute as being synonymous with the word "permit". In the case of *Reynolds v. Stockman,* 109 S. C. 112, 95 S. E. 341, it appears that a contract was made whereby one Reynolds "agrees to allow" one Stockman to cut timber measuring six inches in diameter. The Court construed the use of this word as showing an intention that the defendant was allowed to cut all timber

of the size stated but there was no obligation to cut all of the timber of that size. Thus, the word "allow" was construed as a license or a permission to cut timber of the size stated. In the case of *Snyder v. Central Vermont Ry.,* 112 Vt. 190, 22 A. (2d) 181, it was held that the word "allow" and the word "permit" are synonymous and are often used as convertible terms.

The phrase "shall have the right" in a New York statute, providing under certain circumstances that the board of water commissioners of villages shall have the right to take property, is to be construed in a permissive and not a mandatory sense, and, therefore, gives the commissioners a discretionary power to act or to refrain from acting. *Colby University v. Village of Canandaigua,* 2 Cir., 69 F. 671.

It thus appears that a reasonable construction of the word "allow" and the phrase "shall have the right" is that such were used in a permissive rather than a mandatory sense.

In the case of *Miller v. Johnson et al.,* 126 S. C. 321, 119 S. E. 902, this Court with reference to what is now Section 10-705 of the Code, said:

"The object of the act evidently was to *permit* the pleading of a counterclaim founded on tort in an action *ex delicto* which could not be done under practice prior to its enactment. (Emphasis added.)

\* \* \*

"The Act of 1920 permits a counterclaim to be pleaded. It deals with the general right to counterclaim in tort in an action sounding in tort. It does not deal with the question of the proper mode of pleading two or more counterclaims or to prescribe how they shall be pleaded."

We conclude that the question here involved is not governed by Section 10-652 of the Code, rather it is controlled by Section 10-705 of the Code, and this section does not require a compulsory counterclaim

but does permissively accord to a defendant the right to interpose, if he elects so to do, a counterclaim founded on tort, if the cause of action of the plaintiff and defendant arise out of the same state of facts.

The general rule in regard to the defendant's election to assert his counterclaim is stated in 8 A. L. R. 695 as follows:

"The general rule is that a defendant, having a claim available by way of set-off, counterclaim, or cross petition, has an election so to plead it, or to reserve it for a future independent action, and a prior action in which a claim might have been asserted as a set-off, counterclaim, or cross petition is no bar to a subsequent independent action thereon."

The appellant in this action has not, as defendant in the prior action, asserted by way of counterclaim any right to damages consequent on the collision and was not required so to do in order to protect his claim. He might so have done but was not bound to, and he might have elected whether he would assert his claim for damages in that action or proceed in an independent action to recover the damages, if any, he had suffered. Having elected to prosecute his claim for damages in an independent action, as was his right, it might not be abated because of the pendency of the previously brought action. It follows that the Trial Judge was in error in abating the Darlington action.

The only other question for determination is whether the Trial Judge erred in refusing to abate the Darlington County action as to the appellant, James Monroe Johnson.

The complaint in the Darlington County action alleges that the destruction of the automobile and the injuries to Collins were proximately caused and occasioned by the negligence and willfullness of James Monroe Johnson, acting in the scope of his employment for the respondent.

We have held that the identification of master and servant is so complete that a joint action is maintainable against the two, even though liability of the

master rests upon the principle of *respondeat superior*. Where a servant is guilty of negligence or willfullness while acting for a master within the scope of his employment, the liability is joint and several. *Mackey v. Frazier,* 234 S. C. 81, 106 S. E. (2d) 895.

It is well established that one who is injured by the wrongful act of two or more joint tort-feasors has an election or option to sue each of such joint tort-feasors separately or to join them as parties defendant in a single action. The election or option referred to is given to the plaintiff and not to the defendant. *Simon et al. v. Strock,* 209 S. C. 134, 39 S. E. (2d) 209, 168 A. L. R. 596.

The appellant Johnson was not a party to the Florence County action and the Darlington County action against him cannot be abated because of the pendency of the prior action.

The judgment of the lower Court is reversed insofar as the appeal of James L. Collins is concerned and it is affirmed insofar as the appeal of James Monroe Johnson is concerned.

Reversed in part; affirmed in part.

TAYLOR, C. J., and LEWIS, BUSSEY and BRAILSFORD, JJ., concur.