EDWARD LEON UNDERWOOD, T/A THE CASTAWAY NIGHT CLUB, Petitioner v. STATE BOARD OF ALCOHOLIC CONTROL, Respondent

No. 74

(Filed 12 May 1971)

1. Constitutional Law § 14; Intoxicating Liquor § 1— sale of alcoholic beverages — regulation — police power

The regulation of the sale and use of alcoholic beverages is within the police power of the State.

2. Intoxicating Liquor § 2; Administrative Law § 5— suspension of alcoholic beverage license — judicial review

On judicial review of the suspension and revocation of licenses by the State Board of Alcoholic Control, the "whole record" test is applicable. G.S. 143-315(5).

3. Intoxicating Liquor § 2— suspension of beer license — customers engaging in affray on premises — insufficiency of ABC Board findings

The ABC Board erroneously suspended a tavern owner's retail beer license on the ground that he permitted his customers to engage in an affray on his premises, where all the evidence was to the effect that upon the occurrence of the affray the owner's employees forcibly ejected the troublemakers from the premises.

4. Intoxicating Liquor § 2— suspension of license for permitting affray on premises — requirement of knowing acquiescence

ABC Regulation No. 30(5) which authorizes suspension or revocation of retail beer license for "permitting any person engaging in an affray or disorderly conduct" means a knowing acquiescence in such conduct; the mere fact that an affray took place on the premises does not violate the regulations.

5. Intoxicating Liquor § 2— suspension of beer license — consumption of liquor on premises — insufficiency of ABC Board's findings

The ABC Board erroneously held that a tavern owner permitted the consumption of alcoholic liquors on his licensed premises in violation of G.S. 18-78.1(5), where the evidence relating to the violation

consisted solely of an officer's testimony that two boys drank whiskey and rum in the owner's parking lot within a period of thirty-five minutes, and where the owner's uncontradicted evidence was to the effect that his personnel patrols the parking lot at night but there is difficulty in watching all the cars when two or three hundred patrons are on the premises.

**6. Intoxicating Liquor § 2— suspension of beer license — improper supervision of premises**

The mere fact that two boys were caught consuming alcoholic liquors in a tavern owner's parking lot within a thirty-five minute period does not warrant the suspension of the owner's retail beer license on the ground that the owner failed to properly supervise his premises on the night in question, where there was uncontradicted evidence that the owner's employees were patrolling the parking lot on the night in question.

APPEAL by Respondent from *Clark, J.,* 14 November 1970 Session of WAKE Superior Court.

On 3 April 1970 the State Board of Alcoholic Control (Board) notified Edward Leon Underwood (petitioner) to appear before the Hearing Officer of the Board on 7 May 1970 to show cause why his retail beer and/or wine permit should not be revoked or suspended for:

(1) Permitting and allowing persons to become engaged in an affray and disorderly conduct on your retail licensed premise on or about March 7, 1970, in violation of Board of Alcoholic Control Regulation No. 30(5).

(2) Permitting and allowing persons to possess and consume alcoholic beverages on your retail licensed premise on or about March 28, 1970, 10:00 p.m. to 10:35 p.m. in violation of G.S. 18-51(6)d. and G.S. 18-78.1(5).

(3) Failing to give your retail licensed premise proper supervision on or about March 7, 1970, and March 28, 1970, 10:00 p.m. to 10:35 p.m. G.S. 18-78.

(4) No longer considered to be a suitable person to hold a State retail beer permit. G.S. 18-136.

The Petitioner appeared in obedience to the notice and the hearing was conducted before D. L. Pickard, Assistant Director-Hearing Officer, at the appointed time and place.

Underwood v. Board of Alcoholic Control

Petitioner was accompanied by his father but was not represented by counsel.

W. C. Ludwick, State ABC Officer assigned to Orange County, testified that petitioner, trading as the Castaway Night Club, had been given several warnings; that he obtained copies of warrants against petitioner, Joseph Grasty and Harold Haymie arising out of an affray at the Castaway Night Club on 7 March 1970; that Edward Underwood was fined $25.00 for assault on Joseph Grasty, Leon Underwood was fined $15.00 for assault on Joseph Grasty, and Joseph Grasty was fined $40.00 for trespassing; that Harold Haymie was found not guilty; that Joseph Grasty is the brother-in-law of Edward Leon Underwood.

Officer Ludwick further testified that on Saturday night, 28 March 1970, at 10:00 p.m., he was sitting in his parked car at the Castaway Night Club, saw two boys come out of the club and enter a car parked twenty feet away; that he then saw the driver of the car tilt a bottle as if pouring into a cup; that he went to the car, identified himself as an ABC officer and demanded the bottle; that the driver handed him a bottle of Bacardi Rum approximately one tenth full; that the driver's name was Johnny Eugene Moore of Carrboro, North Carolina, who stated he was sorry and did not know it was a violation of the law; that he impounded the whiskey and returned to his car; that at 10:35 p.m. several boys went to a car parked on the parking lot of the Castaway Night Club with cups in their hands and a bottle of whiskey; that he approached the car the boys had entered and they were drinking out of paper cups; that he obtained the bottle and found it to be a fifth of Ancient Age Whiskey; that the driver of that car was James Davis Knott of Oxford, North Carolina; that he impounded the whiskey since the club did not have a brown bagging permit.

Officer Ludwick further testified that he then went inside, confronted the owner Edward Leon Underwood, and told him he had picked up two bottles of whiskey on the parking lot; that he talked to him about the fight that had occurred on the premises on 7 March 1970 and told him both the whiskey and the fight were in violation of the law and pertinent regulations and would be reported to the Raleigh office.

---

---

Officer Ludwick offered into evidence photostatic copies of the warrants mentioned in his testimony.

Edward Leon Underwood testified as a witness in his own behalf. He stated that he is the owner of the Castaway Night Club and held an on-premise beer permit during the month of March 1970; that Joseph Grasty, his wife's brother, and Harold Haymie got into an argument with another couple and began fighting at the club on 7 March 1970 and some of the employees of the club put them out; that this caused the disturbance that resulted in the issuance of the warrants; that his father and mother and three brothers work at the club; that Joseph Grasty struck his father and his father slapped Grasty twice, put him in a car and made him leave; that he never touched any of them but did plead guilty in the District Court on advice of counsel and paid a fine of $15.00 and the costs; that he did so on his wife's account because her brother Joseph Grasty was already on probation.

Petitioner then offered into evidence a letter signed by C. D. Knight, Sheriff of Orange County, which reads as follows:

To Whom It May Concern            May 6, 1970

I have been acquainted with Mr. T. L. Underwood for the past twenty years, and have known him to be a person of good standing in the community.

Mr. Underwood has never been in any trouble and has always cooperated to the highest possible degree with our department.

The trouble that took [place] at Mr. Underwood's establishment, (The Castaway Club), was between Mr. Edward Underwood and his brother-in-law; and was a family matter.

Any consideration given Mr. T. L. Underwood on this recommendation will be greatly appreciated.

C. D. Knight
Sheriff, Orange County

Petitioner further testified that all patrons who come to his club with whiskey in cups are required to pour it out and are not permitted to enter the club with it; that he has no authority to go outside and seize whiskey people may have in

their cars; that he had signs inside the building which said "No Alcoholic Privileges Allowed Inside the Building"; that once or twice he erected signs on the parking lot to the effect that alcohol was not allowed but they were torn down by people backing over them and by the weather and had not been erected again; that he has personnel to patrol the parking area at night and the grounds were being patrolled on the nights of March 7 and 28, 1970; that he ordinarily has two or three hundred people in his club on Saturday nights where he provides live music and dancing for entertainment, and it is difficult to watch everybody in their cars at the same time.

Upon the foregoing evidence the Hearing Officer found as a fact that Edward Leon Underwood, trading as Castaway Night Club, permitted and allowed persons to become engaged in an affray and disorderly conduct on club premises on 7 March 1970 in violation of the Board's Regulation No. 30(5); that he permitted and allowed persons to possess and consume alcoholic beverages on his retail licensed premises on 28 March 1970 at 10:00 p.m. and 10:35 p.m. in violation of G.S. 18-51(6)d and G.S. 18-78.1(5); that he failed to give his retail licensed premises proper supervision on 7 March 1970 by allowing persons to engage in an affray on the premises; and that he failed to give his licensed premises proper supervision on 28 March 1970 at 10:00 p.m. to 10:35 p.m. by allowing persons to have and consume alcoholic beverages on said premises.

The Hearing Officer further recited that Edward Leon Underwood received a letter of warning from the ABC Board on 2 August 1966 calling his attention to the following violations: (1) Allowing Bobby Peeler, a minor, on petitioner's licensed premises on 15 July 1966 at 9:30 p.m. and permitting said minor to work in and about the premises where malt beverages were sold and dispensed under an on-premise permit in violation of G.S. 110-7 and Malt Beverage Regulation No. 17; and (2) failing to give proper supervision to the licensed premises on 15 July 1966 in violation of G.S. 18-78.

The Hearing Officer included in the history of petitioner's case the fact that petitioner's permit was suspended for sixty days beginning 10 December 1965 for failing to keep the licensed premises clean and orderly, failing to give the licensed premises proper supervision, and for permitting violations of G.S. 18-78.1(4).

Upon the facts found and in light of the history above recited, the Hearing Officer recommended that petitioner's permit be suspended for a period of ninety days. The Board approved the findings and notified petitioner that his retail beer permit was suspended for a period of ninety days effective 29 June 1970 by reason of the violations set out in the findings of fact.

On 24 June 1970 petitioner filed this proceeding in the Superior Court of Wake County pursuant to G.S. 143-306 *et seq.* and obtained an order staying the action of the Board pending the outcome of the review in superior court. The matter was heard on the record by Judge Clark who entered the following judgment:

THIS CAUSE coming on regularly to be heard before the undersigned Judge presiding at a session of Superior Court of Wake County; and the Court having fully reviewed, examined and considered the administrative decision of the respondents in this cause with respect to the petitioner's permits or licenses and the record upon which said administrative decision rests and the matter being heard in compliance with the requirements of the General Statutes of North Carolina, the Court finds:

1. That the findings of fact and decision of the respondents herein are not supported by competent, material and substantial evidence in view of the entire record as submitted, and the substantial rights of the petitioner have been prejudiced.

2. That the findings of facts and decision of the respondent are arbitrary and capricious and should be reversed.

NOW, THEREFORE, it is CONSIDERED, ORDERED, ADJUDGED and DECREED that the decision of the respondent shall be and the same is hereby reversed in all respects and further that the respondents shall pay the cost to be taxed by the Clerk;

IT IS FURTHER ORDERED that the judgment of this Court is that any preliminary stay order heretofore made and entered herein shall become permanent.

Given under my hand and seal at the Courthouse in Raleigh, North Carolina, this the 2nd day of December, 1970.

EDWARD B. CLARK
Judge Presiding

To the ruling of the court and the signing of the foregoing judgment, the Board appealed to the Court of Appeals assigning errors noted in the opinion. The matter was transferred to this Court for initial appellate review under our general referral order dated 30 July 1970.

*Robert Morgan, Attorney General, by Christine Y. Denson, Assistant Attorney General, and James L. Blackburn, Staff Attorney, for the respondent appellant.*

*Charles B. Hodson and Robert L. Satterfield, attorneys for petitioner appellee.*

HUSKINS, Justice.

**[1, 2]** It is well established that regulation of the sale and use of alcoholic beverages is within the police power of the State. *Boyd v. Allen,* 246 N.C. 150, 97 S.E. 2d 864 (1957). The State Board of Alcoholic Control is empowered to enforce laws relating to the sale and control of alcoholic beverages. G.S. 18-39. The suspension and revocation of licenses by the Board are administrative decisions affecting the rights of specific parties and are subject to judicial review under the provisions of Article 33 of Chapter 143 of the General Statutes. Upon such review, the "whole record" test is applicable, and the decision of the Board may be reversed if substantial rights of the licensee are prejudiced by administrative findings, inferences, conclusions or decisions which are not supported "by competent, material, and substantial evidence in view of the entire record as submitted." G.S. 143-315(5); *Freeman v. Board of Alcoholic Control,* 264 N.C. 320, 141 S.E. 2d 499 (1965); *Keg, Inc. v. Board of Alcoholic Control,* 277 N.C. 450, 177 S.E. 2d 861 (1970). The "whole record" test must be distinguished from the "any competent evidence" standard. *See* Hanft, North Carolina Case Law—Administrative Law, 45 N. C. L. Rev. 816 (1967).

**[3]** The State Board of Alcoholic Control has adopted regulations to administer the laws governing the sale of wine and malt beverages, and the Board may revoke or suspend the State permit of any licensee for a violation of the law or of any regulation adopted by it. G.S. 18-78(d). Regulation No. 30 reads as follows: "Permits authorizing the sale at retail of beverages, as defined in G.S. 18-64, and Article 5 of Chapter 18 of the General Statutes, for on or off premises consumption may be suspended or revoked upon violation of . . . the following pro-

visions upon the licensed premises: . . . 5. Permitting any person engaging in an affray or disorderly conduct." Petitioner is charged with a violation of this regulation.

All the evidence adduced at the hearing and considered by the Board tends to show that the licensee was making a reasonable effort in good faith to enforce the provisions of G.S. 18-78.1 (4) which provides that a licensee shall not permit on the licensed premises any disorderly conduct, breach of the peace, etc. Accordingly, Underwood's employees were ejecting troublemakers from his premises, thus indicating petitioner's disapproval of the disorderly conduct in which the participants were engaged. Notwithstanding such evidence, petitioner was found by the Board to be in violation of Regulation No. 30 (5)—permitting others to engage in an affray.

That there was an affray or breach of the peace on petitioner's premises is not disputed. The question is whether forcible removal from the premises of persons engaged in an affray constitutes "permitting or allowing persons to become engaged in an affray"? The answer is no.

To permit means to acquiese with knowledge, to knowingly consent. *Hinkle v. Siltamaki,* 361 P. 2d 37 (Wyo., 1961). The words "permit" and "allow" are synonymous. *Collins v. Johnson,* 242 S.C. 112, 130 S.E. 2d 185 (1963) ; *City of Eastlake v. Ruggiero,* 7 Ohio App. 2d 212, 220 N.E. 2d 126 (1966). "Permit" has been construed to mean in effect "knowingly permit," as the following cases illustrate. To permit sale of alcoholic beverages to a minor connotes some opportunity for knowledge and prevention of the sale. *People v. Teetsel,* 177 N.Y.S. 2d 612, 12 Misc. 2d 835 (1958). To permit livestock to run at large means to allow it to be done with knowledge. *Hinkle v. Siltamaki, supra.* To permit the unlawful sale of liquor in his building, an owner must have knowledge of the violation and consent to it. *Gray v. Stienes,* 69 Iowa 124, 28 N.W. 475 (1886). To permit persons "to resort for the purpose of drinking intoxicating liquors" means to consent to same. *State v. Wheeler,* 38 N.D. 456, 165 N.W. 574 (1917). To permit gaming in one's house means to consent to it with knowledge. *Stuart v. State,* 60 S.W. 554 (Tex. Crim. App., 1901).

[3, 4] We therefore hold that Regulation No. 30 (5), authorizing suspension or revocation of license for "permitting any person engaging in an affray or disorderly conduct," means

knowing acquiescence in such conduct. The mere fact that an affray took place on the premises is no violation of the regulation and affords no basis for suspension or revocation of license. The record in this case does not support by competent, material and substantial evidence the charge that Edward Leon Underwood *knowingly permitted* the affray. Instead, it points to the conclusion that he was making a reasonable effort in good faith to prevent such conduct by ejecting the wrongdoers from the premises.

It is unlawful for any person "to permit any alcoholic beverages to be possessed or consumed upon any premises not authorized pursuant to chapter 18, North Carolina General Statutes." G.S. 18-51(6)d. Furthermore, under a license for the sale of malt beverages and wines for consumption on or off premises, no holder of such license shall *"knowingly permit* the consumption on the licensed premises of any kind of alcoholic liquors the sale or possession of which is not authorized by law." (Emphasis added.) G.S. 18-78.1(5).

[5]   The Board charges Edward Leon Underwood with a violation of the foregoing statutes in that he allegedly permitted the consumption of alcoholic liquors on his licensed premises. We now examine the validity of this charge.

.     Officer Ludwick testified that at 10:00 p.m. on the night in question he saw two boys come out of the club, enter a parked car, and tilt a bottle as if pouring into a cup; that he demanded and received from the boy named Bobby Eugene Moore a bottle of Bacardi Rum approximately one tenth full; that at 10:35 p.m. several boys went to a parked car on the club's parking lot with cups in their hands and a bottle of whiskey; that he demanded and received from a boy named James Davis Knott a bottle of Ancient Age Whiskey.

Petitioner testified that all patrons with whiskey are required to surrender it or pour it out before entering the club; that signs had been erected on the parking lot to the effect that alcohol was not allowed but had been torn down by people backing over them; that he has personnel who patrol the parking area at night and the grounds were being patrolled on the night the episodes described by Officer Ludwick occurred; that he ordinarily has two or three hundred patrons on Saturday night, and it is difficult to watch everybody in their cars at the same

---

---

time. Petitioner's evidence is not refuted. The Board relies on the evidence of Officer Ludwick.

Knowledge may be implied from the circumstances. *State v. Stathos,* 208 N.C. 456, 181 S.E. 273 (1935). Knowledge means "an impression of the mind, the state of being aware; and this may be acquired in numerous ways and from many sources. It is usually obtained from a variety of facts and circumstances. Generally speaking, when it is said that a person has knowledge of a given condition, it is meant that his relation to it, his association with it, his control over it, and his direction of it are such as to give him actual information concerning it." *State v. Hightower,* 187 N.C. 300, 121 S.E. 616 (1924). Thus the holder of a license for the sale of wine and beer who is aware of violations on his premises but who arranges never to see them cannot be said to be ignorant of their existence. He must take steps to avoid violations or suffer the penalties prescribed. *Campbell v. Board of Alcoholic Control,* 263 N.C. 224, 139 S.E. 2d 197 (1964).

When the foregoing principles are applied to the record as a whole in the case before us, there is a lack of substantial evidence that petitioner knowingly permitted the two violations observed by Officer Ludwick. The mere fact that two boys violated the law on petitioner's premises on a single night within a period of thirty-five minutes does not constitute substantial evidence that petitioner *knowingly permitted* the consumption of alcoholic liquors on his premises.

[6] The charge of failing to properly supervise the premises is likewise unsupported by substantial evidence. There was evidence that petitioner's employees were patrolling the parking lot on the night in question and no evidence to the contrary. In *Food Stores v. Board of Alcoholic Control,* 268 N.C. 624, 151 S.E. 2d 582 (1966), the proprietor was charged, *inter alia,* with failure to give proper supervision to his premises by allowing the sale of beer to a minor. Chief Justice Parker, writing for the Court, said: "Surely, the sale of beer on one occasion to a minor under the circumstances here is not a failure to give the licensed premises proper supervision." By like token, under the circumstances here, we hold that the failure to observe all activities on a busy parking lot for a period of thirty-five minutes is not a failure, within the meaning of the law, to give the licensed premises proper supervision.

For lack of competent, material and substantial evidence to support the findings and order of the Board, in view of the entire record as submitted, the judgment of the superior court is

Affirmed.