ALVIN D. DOVE AND MAURICE MARSHALL, A PARTNERSHIP, T/A SAINT'S LOUNGE v. NORTH CAROLINA BOARD OF ALCOHOLIC CONTROL

No. 7710SC744

(Filed 15 August 1978)

**Intoxicating Liquor § 2.5— beer license — violation without knowledge of permittee**
    The State ABC Board properly suspended petitioners' on-premises beer permit on the ground that petitioners "knowingly allowed" the use of their premises for an unlawful purpose where petitioners' employee sold heroin while on the premises, notwithstanding there was no evidence that petitioners had actual knowledge that the employee sold the heroin, since all acts of an employee are imputed to the permittees for the purposes of revoking or suspending a permit under G.S. 18A-43(a).

APPEAL by respondent from *Graham, Judge.* Judgment entered 3 June 1977, Superior Court, WAKE County. Heard in the Court of Appeals 2 June 1978.

Evidence before the Board of Alcoholic Control revealed the following essential facts: Special Agent John Price of the Drug Enforcement Administration entered petitioners' premises, Saint's Lounge, on 5 August 1975 and purchased a "spoon" of heroin from Gerald Brown for $250. At that time petitioners held an "on-premises" beer permit, and Gerald Brown was working behind the bar with petitioner Freddie Marshall serving beer to customers. Brown, in fact, sold a beer to Agent Price. There was no evidence, other than the physical proximity of co-permittee Marshall, that either of the petitioners had actual knowledge of the transaction.

By notice, the petitioners were informed of the incident and informed that they had violated G.S. 18A-43(a) by "[k]nowingly allowing your licensed premises to be used for unlawful purposes on or about August 5, 1975, 10:45 p.m. by knowingly allowing your employee, Gerald Edward Brown, to sell a controlled substance (Heroin) to Special Agent Johnnie L. Price. . . ." The hearing officer found a violation and recommended a 120 day suspension of petitioners' permit. The Board approved the findings of fact and imposed a 45 day suspension with an additional 75 day suspension being suspended for one year. The co-permittees petitioned the Superior Court for review, prayed for a stay order which was granted, and prayed that the "action for the Board be rescinded *toto*". After hearing, the Superior Court found that the sale of heroin occurred and that co-permittee Marshall was present but co-permittee Dove was not. The trial court concluded that there was insufficient evidence that petitioners knew of the actions of Brown, that they did not knowingly allow the said use of their premises, and that Brown's actions could not be imputed to petitioners. The trial court ordered that the suspension of the permit be rescinded. From that order, respondent Board of Alcoholic Control appeals seeking a reversal of the trial court's order and re-instatement of the suspension.

*Attorney General Edmisten, by Assistant Attorney General James Wallace, Jr., for the respondent appellant.*

*Beech and Pollock, by D. D. Pollock, for the petitioner appellees.*

BROCK, Chief Judge.

Respondent Board of Alcoholic Control contends that the actions of Gerald Brown in selling heroin to Agent Price are imputed to petitioners for the purposes of this proceeding. Respondent contends, and petitioners concede, that on the night of 5 August 1975 Gerald Brown was an employee of petitioners under the Malt Beverage Regulations of the Board of Alcoholic Control. The Board argues that because Brown is an employee, his actions are legally imputed to petitioners and that, therefore, the trial court erred in concluding that petitioners did not "knowingly allow" the use of their premises for an unlawful purpose. We agree.

G.S. 18A-43(a) provides in pertinent part that,

"If any permittee . . . allows the premises with respect to which the permit was issued to be used for any unlawful, disorderly, or immoral purposes, . . . his permit may be revoked or suspended by the State Board of Alcoholic Control."

G.S. 90-95 makes the sale of heroin a punishable offense. The sale of heroin is an unlawful purpose within the meaning of the term in G.S. 18A-43(a). The only genuine question raised by the facts before us is whether petitioners "knowingly allowed" the use of the premises for unlawful purposes. Petitioners contend, and the trial court concluded, that petitioners could not be said to have knowingly allowed that use absent, at a minimum, a showing of circumstances putting them on notice that Brown was selling heroin on the premises. Respondent contends that by law the very acts of an employee are imputed to a permittee for the purposes of suspending his license under G.S. 18A-43.

Although petitioners' position has some appeal, the case law is otherwise. Our Supreme Court has faced this same issue previously and has clearly set out the law in this regard.

"The petitioners, the licensees, elected to operate their retail beer business at least in part with employees, and they must be responsible to the licensing authority for their employees' conduct in the exercise of their license, whether they know about it or not, else we would have the absurd result that beer could be sold at forbidden hours on the

premises by their employees and whiskey sold on the premises by their employees, and the licensees would be immune to disciplinary action by the State Board of Alcoholic Control, if they had no knowledge of it. Such a result would cause a complete breakdown of beverage control by the State, and cannot have been contemplated by the Legislature.

In a number of cases the courts have upheld revocation, cancellation or suspension of liquor licenses because of improper, or wrongful or unlawful acts of the licensees' employees or agents, although such acts are committed against the instructions of the licensee or without his knowledge or consent. This is sound law, which we adopt. (Citations omitted.) . . . 'In our opinion there is no room for debate on the question whether, for the purpose of suspension or cancellation of licenses, the holder of a retail liquor license should be held responsible for the acts and conduct of his employee in the operation of the business. Sound public policy requires that he is responsible. To hold otherwise would lead to a complete breakdown of the whole system and theory of supervision contemplated by the Act, and would permit a licensee to escape liability for suspension or revocation of his license merely on the ground he had no knowledge of and had not authorized or approved a violation by the employee. In an effort to get at this very thing the Legislature has seen fit to classify those persons to whom licenses may be granted and who may be employed by licensees. In the nature of things it must be held that the licensee is responsible at all times for the acts and conduct of his employee in the operation of the business. The rule under consideration is not unreasonable, arbitrary, capricious or in contravention of the Act, and is not unconstitutional.' " *Boyd v. Allen*, 246 N.C. 150, 155-156, 97 S.E. 2d 864, 868 (1957). *See also Fay v. Board of Alcoholic Control*, 30 N.C. App. 492, 227 S.E. 2d 298, *cert. denied* 291 N.C. 175 (1976).

The case cited by petitioners deals with the acts of customers. In *Underwood v. Board of Alcoholic Control*, 278 N.C. 623, 181 S.E. 2d 1 (1971), the question was whether the permittee knowingly permitted an affray. In that case, the fight involved *customers* not *employees*, and the employees were doing

everything possible to eject those involved in the fight. The case is clearly not applicable.

It is clear that the law of this State is that all acts of employees are imputed to the permittee for the purposes of G.S. 18A-43. Thus, upon the facts before the Board and, subsequently, the trial court, we conclude that petitioners did, as a matter of law, knowingly allow the use of their premises for an unlawful purpose. The judgment of the trial court is reversed and the order of the Board suspending petitioners' license is affirmed and reinstated.

Reversed.

Judges VAUGHN and MARTIN concur.