STATE OF NORTH CAROLINA v. ELADIO AGUILAR-OCAMPO

No. COA11-1160

(Filed 20 March 2012)

**1. Discovery—violation—failure to disclose evidence in timely manner—circumstances considered—no prejudice**

The trial court did not commit prejudicial error in a trafficking in cocaine by possession and conspiracy to sell cocaine case by admitting into evidence the transcript of the recording of the drug transaction and the testimony of the interpreter who prepared that transcript. Although the State violated the rules of discovery by failing to disclose to the defense in a timely manner the contents of the transcript, the identity of the expert who prepared it, and the State's intent to offer the interpreter's expert opinion testimony, the trial court did not abuse its discretion by

choosing not to strike the challenged evidence as the court considered the circumstances surrounding the alleged discovery violation both before and after admitting the challenged evidence. Further, even assuming *arguendo* that the trial court erred in allowing the transcript and the testimony into evidence, defendant failed to show he was prejudiced by the error.

**2. Drugs—trafficking by possession of cocaine—conspiracy to sell cocaine—jury instructions—adequately contained substance of defendant's requested instruction**

The trial court did not err by denying defendant's request for a special instruction to the jury on the word "knowingly," as it appears in the elements of the offenses for trafficking by possession and conspiracy to sell cocaine. The instructions given by the trial court, when read as a whole, adequately contained the substance of defendant's requested instruction for an explanation that defendant must have intentionally and voluntarily participated in the crimes.

Appeal by defendant from judgment entered 4 August 2010 by Judge William R. Pittman in Wake County Superior Court. Heard in the Court of Appeals 21 February 2012.

*Attorney General Roy Cooper, by Assistant Attorney General Hilda Burnett-Baker, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Constance E. Widenhouse, for defendant appellant.*

McCULLOUGH, Judge.

On 4 August 2010, Eladio Aguilar-Ocampo ("defendant") was convicted of trafficking cocaine by possession and conspiracy to sell cocaine. On appeal, defendant contends the trial court erred in admitting certain evidence in violation of the discovery rules and in denying his request for a special jury instruction on the knowledge element of both offenses. We hold defendant received a fair trial free from prejudicial error.

## I. Factual and Procedural Background

In September 2009, officers with the Raleigh Police Department's career criminal unit arrested James Joseph McMillan ("McMillan") for drug offenses involving selling cocaine to suspected local gang members. Federal investigators took custody of McMillan, and McMillan

agreed to cooperate with Raleigh police in investigating a local drug organization to help with his federal sentence.

McMillan told police his primary source for cocaine was Luis Nunez Garcia ("Luis"). McMillan also mentioned Luis's brother, Manuel Nunez Garcia ("Manuel"). The police focused their investigation on Luis. Using McMillan as a confidential informant, police officers arranged to make a controlled purchase of cocaine from Luis, with the ultimate objective of learning more about Luis and his operation and identifying more targets up the supply chain before arresting Luis. McMillan's primary contact in the Raleigh Police Department was Officer Keith Heckman ("Officer Heckman").

On 10 December 2009, McMillan made arrangements by phone to purchase one ounce of cocaine from Luis. Officer Heckman and Detective Jason Hoyle ("Detective Hoyle") then outfitted McMillan with hidden audio-video equipment and gave him $1,000 in marked bills. Thereafter, Luis called McMillan and told McMillan to meet him at a specific CVS Pharmacy for the exchange. Officer Heckman and Detective Hoyle followed McMillan to the CVS Pharmacy and took up surveillance positions, along with other officers.

Once McMillan arrived at the CVS Pharmacy, he called Luis. Luis told McMillan he was at the hospital with his son, but his brother Manuel and another individual would be at the CVS Pharmacy in a burgundy van. McMillan identified the van in the parking lot and got into the backseat. Manuel was in the front passenger seat of the van, and defendant was in the driver's seat. Officers confirmed two individuals were inside the van besides McMillan.

Inside the van, a conversation occurred regarding the present cocaine purchase. During the conversation, McMillan was also questioned about a debt he owed Luis for a prior drug transaction. Luis was also contacted and consulted by telephone during the conversation. The conversation was partly in Spanish between defendant, Manuel, and Luis, and partly in English when communications were made to McMillan. During the transaction, Manuel sold 37.05 grams of cocaine, a trafficking amount, to McMillan. The entire transaction was captured on McMillan's hidden audio-video equipment.

After completing the purchase, McMillan left the CVS Pharmacy and met Officer Heckman at another location, at which Officer Heckman retrieved the drugs and the audio-video equipment from McMillan. Police made no arrests that day in order to continue their ongoing investigation into the drug operation.

On 7 January 2010, Luis and Manuel were arrested on murder charges in Chatham County, North Carolina. Thereafter, on 13 January 2010, defendant was arrested on drug charges related to the 10 December 2009 drug transaction. On 8 March 2010, defendant was indicted for trafficking cocaine by transportation, trafficking cocaine by possession, and conspiracy to sell cocaine. Defendant was tried by jury beginning 3 August 2010.

Prior to trial, defense counsel filed a motion for discovery, specifically soliciting information regarding any expert witnesses the State intended to call at trial, as well as any reports or other written material produced by such experts. In response, the State produced a translated transcript of the audio-video recording of the transaction. However, at a hearing held just prior to trial, the State revealed the transcript had not been translated by a translator certified by the Administrative Office of the Courts ("AOC"). Immediately following the hearing, the State contacted Fred Albritton ("Albritton"), an AOC-certified Spanish interpreter, to prepare a second transcript of the audio-video recording by making any necessary edits to the original transcript. Albritton completed the second transcript around 1:00 p.m. on Friday, 30 July 2010, and a copy of the transcript was received by defendant later that afternoon. In the revised transcript, Albritton identified three voices present inside the van and labeled them CI, for "confidential informant;" H1, for "Hispanic 1;" and H2, for "Hispanic 2." Albritton also identified a fourth voice on the audio recording as an individual communicating by telephone.

Defense counsel moved the trial court to suppress the revised transcript and preclude Albritton from testifying, arguing the State had failed to timely provide information as to the identity and qualifications of the translator in violation of the rules of discovery. The State argued it was not presenting Albritton as an expert, and the trial court held a *voir dire* hearing before denying defendant's motion, overruling his objection, and allowing both Albritton to testify and the transcript into evidence.

During trial, the audio-video recording was played for the jury twice. The second time, the jury was provided a copy of Albritton's transcript of the audio portion to read along while they observed and listened to the video. Albritton testified that he believed the speaker designated as H1 in the transcript was "the person sitting to the left in the video, which seems to be where the driver's seat is located in the vehicle." Albritton testified he based his identification on the "tonal quality of the voice and accent," as well as contextual clues

from the video portion of the recording. Albritton further testified he did not think his translation was 100 percent accurate and that parts of the recording were indiscernible, given the poor quality of the recording. Following Albritton's testimony, defendant again moved to strike the evidence and also moved the trial court for a mistrial, raising the discovery violation issue regarding Albritton's alleged expert opinion evidence. The trial court denied defendant's motions.

Officer Heckman, Detective Hoyle, and McMillan also testified at trial as to the events surrounding the investigation and the transaction at issue, and defendant testified in his own defense. At the conclusion of the trial, the jury returned verdicts of guilty of both trafficking cocaine by possession and conspiracy to sell cocaine and not guilty of trafficking by transportation.

At sentencing, the trial court consolidated the two charges, found one mitigating factor, and imposed a term of 35 to 42 months' imprisonment and a $50,000 fine. Defendant timely appealed from the trial court's judgment to this Court.

## II.  Admission of Evidence

[1] Defendant first contends the trial court erred by admitting into evidence the transcript of the recording of the drug transaction and the testimony of Albritton, the interpreter who prepared that transcript. Defendant argues the State violated the rules of discovery by failing to disclose to the defense in a timely manner the contents of the transcript, the identity of the expert who prepared it, and the State's intent to offer Albritton's expert opinion testimony concerning both the identity of the individuals speaking on the audio-video recording and the meaning of the conversation taking place. Defendant argues the State's discovery violation required exclusion of the challenged evidence and that he was prejudiced by the trial court's erroneous admission of the evidence at trial.

"Discovery in a criminal case is governed by Chapter 15A, Article 48 of the North Carolina General Statutes." *State v. Ellis*, ____ N.C. App. ____, ____, 696 S.E.2d 536, 539 (2010). Specifically, upon a defense motion, the court must order:

> The prosecuting attorney to give notice to the defendant of any expert witnesses that the State reasonably expects to call as a witness at trial. Each such witness shall prepare, and the State shall furnish to the defendant, a report of the results of any examinations or tests conducted by the expert. The State shall

also furnish to the defendant the expert's curriculum vitae, the expert's opinion, and the underlying basis for that opinion. The State shall give the notice and furnish the materials required by this subsection within a reasonable time prior to trial, as specified by the court.

N.C. Gen. Stat. § 15A-903(a)(2) (2011). "[O]nce a party, or the State has provided discovery there is a continuing duty to provide discovery and disclosure." *State v. Blankenship*, 178 N.C. App. 351, 354, 631 S.E.2d 208, 210 (2006); *see also* N.C. Gen. Stat. § 15A-907 (2011).

"[T]he purpose of discovery under our statutes is to protect the defendant from unfair surprise by the introduction of evidence he cannot anticipate." *State v. Payne*, 327 N.C. 194, 202, 394 S.E.2d 158, 162 (1990). N.C. Gen. Stat. § 15A-910 (2011) empowers the trial court to apply sanctions for noncompliance with the discovery rules, including granting a continuance or recess, prohibiting the introduction of non-disclosed evidence, or declaring a mistrial. *Id.* § 15A-910(a)(2), (3), (3a). "Although the court has the authority to impose such discovery violation sanctions, it is not required to do so." *State v. Hodge*, 118 N.C. App. 655, 657, 456 S.E.2d 855, 856 (1995). "Because the trial court is not required to impose any sanctions for abuse of discovery orders, what sanctions to impose, if any, is within the trial court's discretion[,]" and will not be reversed absent a showing of abuse of that discretion. *State v. Weeks*, 322 N.C. 152, 171, 367 S.E.2d 895, 906 (1988).

During the trial in the present case, when the State proceeded to introduce the transcript prepared by Albritton and to call Albritton as a witness, the trial court held a *voir dire* hearing to determine the admissibility of the challenged evidence. During the *voir dire* hearing, the State conceded that were Albritton testifying as an expert, then the State had violated the discovery rules by not providing the requisite information in a timely manner. However, the State insisted at trial that Albritton would not be testifying as an expert. The trial court agreed and admitted the transcript and Albritton's testimony. On appeal, the State concedes Albritton did in fact testify as an expert regarding his opinion of the translated conversation, as reflected in his transcript, thereby conceding the trial court abused its discretion in determining the witness was not testifying as an expert. *See Blankenship*, 178 N.C. App. at 354-55, 631 S.E.2d at 211 ("The determination of whether a witness' testimony constitutes expert testimony is one within the trial court's discretion, and will not be reversed on appeal absent an abuse of discretion."). Accordingly,

because the challenged evidence consisted entirely of an expert's opinion, the trial court erred in failing to recognize the State's failure to properly comply with the discovery requirements pursuant to N.C. Gen. Stat. § 15A-903(a)(2). *State v. Moncree*, 188 N.C. App. 221, 227, 655 S.E.2d 464, 468 (2008).

Nonetheless, the record reveals, and defendant admits in his reply brief, that "defense counsel was provided enough information to be able to anticipate that the [S]tate would offer expert testimony translating the Spanish portions of the conversation in the vehicle." Indeed, defendant was well aware of the State's initial attempt to have the audio interpreted and transcribed in light of the fact that part of the audio was in Spanish and that defendant was charged with the present offenses based on his involvement in the transaction. *See Moncree*, 188 N.C. App. at 226-27, 655 S.E.2d at 468 (defendant should not have been unfairly surprised by officer's testimony regarding substance found in defendant's shoe where defendant was charged with one count of possession of a controlled substance on the premises of a local confinement facility). Furthermore, the record reveals defense counsel was informed during the pretrial hearing that there was a problem with the original transcript, that the State would not use the original transcript, that the State would contact an AOC-certified interpreter to transcribe the conversation, and that the State would call the interpreter to testify.

Although defendant argues he could not reasonably anticipate what the precise translation would be or that Albritton would offer an opinion that the speaker denoted as H1 in the transcript was the driver of the vehicle, his arguments are inapposite, as both speakers in the transcript are implicated in the transaction, regardless of which Hispanic voice was attributed to the driver of the vehicle, or defend-ant. We also note that defendant had "a full opportunity at trial to cross-examine" Albritton concerning his opinion as to the identity of the speakers in the recording and the meaning of the conversation taking place on that recording, as well as the accuracy of the transcript he prepared and the difficulties he faced in preparing the translation. *See Ellis*, _____ N.C. App. at _____, 696 S.E.2d at 540-41. The record demonstrates the trial court considered these circumstances surrounding the alleged discovery violation both before and after admitting the challenged evidence and decided not to impose any of the requested discovery violation sanctions. Thus, we discern no abuse of discretion in the trial court's failing to strike the challenged evidence in the present case.

Further, assuming *arguendo* that the trial court erred in allowing the transcript and Albritton's expert testimony into evidence, defendant cannot show he was prejudiced by the error. "A defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." N.C. Gen. Stat. § 15A-1443(a) (2011). "The burden of showing such prejudice under this subsection is upon the defendant." *Id.*

Here, defendant argues the transcript was the State's strongest evidence that defendant was acting in concert with Manuel during the drug transaction. Defendant argues the quality of the audio-video recording and the camera angle make it impossible to determine defendant's involvement in the transaction and therefore the video lends little value to the State's case without Albritton's interpretation of the events and conversation depicted. Defendant also argues without the transcript, the State's case relied almost entirely on McMillan's testimony, a witness of doubtful credibility and a prior criminal record. Defendant further argues McMillan's testimony is ambiguous as to defendant's role in the transaction and does not disprove defendant's testimony that he was unaware of the drug transaction until McMillan entered his vehicle.

Despite defendant's arguments to the contrary, the State had abundant other admissible evidence of defendant's participation in the drug transaction such that there is no reasonable possibility that, had Albritton's testimony and the transcript he prepared not been admitted into evidence, a different result would have been reached at trial. At trial, defendant admitted he was the driver of the van in question, that he was present and did not leave the vehicle during the drug transaction, and that he did not object in any way during the transaction. McMillan identified defendant in court as the driver of the van and testified that defendant was talking on the phone with Luis during the transaction, asked McMillan for the money to pay off a prior debt McMillan owed Luis, did not appear nervous, and remained in the van during the entire exchange. Although defendant attacks the credibility of McMillan as a witness on appeal, McMillan's testimony nonetheless constituted evidence against defendant for the jury to properly consider. *State v. Lewis*, 172 N.C. App. 97, 107, 616 S.E.2d 1, 7 (2005) ("[I]t is the province of the jury to weigh the credibility of the witnesses.").

STATE v. AGUILAR-OCAMPO

[219 N.C. App. 417 (2012)]

Moreover, the audio-video recording shows the driver of the van asked McMillan for the money to pay off McMillan's prior debt to Luis and that the driver of the van was speaking on the phone with the individual identified by McMillan as Luis, as the video clearly depicts an exchange of the cell phone between McMillan and the driver of the vehicle. The jury watched this video once during trial, without assistance from the transcript. In addition, the jury asked the trial court, during its deliberations, to view the video again, which was granted. Given this evidence adduced at trial, we fail to see how the trial court's alleged error in admitting the challenged evidence prejudiced defendant.

Despite our present holding, we reiterate the importance of the State's compliance with statutory discovery requirements. "District attorneys are elected public officials, and therefore North Carolina citizens trust the people who serve as district attorneys. Failure of district attorneys to follow statutory discovery requirements erodes the public's trust not only in district attorneys, but in any public official." *Moncree*, 188 N.C. App. at 228, 655 S.E.2d at 468.

### III. Jury Instruction

[2] Defendant's remaining argument on appeal is that the trial court erred in denying his request for a special instruction to the jury on the word "knowingly," as it appears in the elements of the offenses for trafficking by possession and conspiracy to sell cocaine. Defendant contends his requested instruction was a correct statement of the law arising on the evidence presented at trial and that defendant's knowledge was an issue in the case, thereby requiring the trial court to give the requested special instruction. This Court reviews *de novo* a trial court's decisions regarding jury instructions. *State v. Cruz*, 203 N.C. App. 230, 235, 691 S.E.2d 47, 50 (citing *State v. Osorio*, 196 N.C. App. 458, 466, 675 S.E.2d 144, 149 (2009)), *aff'd*, 364 N.C. 417, 700 S.E.2d 222 (2010).

We first summarily address the State's contention that defendant did not preserve this issue for appellate review. During trial, when given an opportunity to object to the trial court's jury instructions, defense counsel responded he had no corrections to the trial court's instructions as given "beyond what we have asked for and lost." Thus, although defendant did not specifically "object" to the instructions, he alerted the trial court to the ruling he desired with respect to the requested instruction, thereby preserving the issue for appellate review. *Cf. State v. Joplin*, 318 N.C. 126, 131-32, 347 S.E.2d 421, 424 (1986) (holding defendant failed to preserve for appellate review the

issue of whether the trial court committed reversible error in failing to include her requested jury instruction by failing to object to the jury instructions when given the opportunity to do so by the trial court).

"A trial judge is required . . . to instruct the jury on the law arising on the evidence. This includes instruction on the elements of the crime. Knowledge is a substantive feature of the crime[s] charged here. Failure to instruct upon all substantive or material features of the crime charged is error." *State v. Bogle*, 324 N.C. 190, 195, 376 S.E.2d 745, 748 (1989). "[I]f a party requests an instruction which is a correct statement of the law and is supported by the evidence, the court must give the instruction *at least in substance*." *State v. Warren*, 327 N.C. 364, 371, 395 S.E.2d 116, 121 (1990) (emphasis added). "North Carolina statutes and case law do not require a trial court to use the exact words a defendant requests to charge the jury." *State v. Sanders*, 171 N.C. App. 46, 53, 613 S.E.2d 708, 713 (citing *State v. Vause*, 328 N.C. 231, 239, 400 S.E.2d 57, 63 (1991)), *aff'd*, 360 N.C. 170, 622 S.E.2d 492 (2005).

In the present case, defendant requested the trial court give the following instruction on the element that defendant must have "knowingly" participated in the crimes:

> You have been instructed that in order to sustain its burden of proof, the government must prove that the defendant acted knowingly. A person acts knowingly if he acts intentionally and voluntarily, and not because of ignorance, mistake, accident, or carelessness. Whether the defendant acted knowingly may be proven by the defendant's conduct and by all of the facts and circumstances surrounding the case.

Defendant points out that he testified at trial that he had no prior knowledge that Luis or Manuel were involved in selling drugs or that Manuel intended to conduct a drug transaction when defendant drove him to the CVS pharmacy. Defendant maintained he was unaware of Manuel's intentions until McMillan entered the vehicle. Thus, defendant argues the evidence presented places his knowledge of the offenses in issue, and the trial court was therefore required to give his requested instruction.

In the present case, the trial court gave the following instructions to the jury:

Intent is a mental attitude seldom provable by direct evidence. It must ordinarily be proven by circumstances from which it may be inferred.

You arrive at the intent of a person by such just and reasonable deductions from the circumstances proven as a reasonably prudent person would draw from those circumstances.

. . . .

A person has constructive possession of the substance if the person does not have it on his person but is *aware of its presence*, and has either alone or together with others both *the power and intent to control its disposition or use.*

*A person's awareness of the presence of the substance and the person's power and intent to control its disposition or use may be shown by direct evidence or may be inferred from the circumstances.*

(Emphasis added.) Further, when instructing the jury on the specific offenses charged, the trial court gave the following instructions:

The Defendant has been charged with trafficking in cocaine by possession, which is the unlawful possession of more than 28 grams of cocaine.

For you to find the Defendant guilty of this offense the State must prove two things beyond a reasonable doubt:

First, that the Defendant *knowingly* possessed cocaine.

*A person possess[es] cocaine if he is aware of its presence and has either by himself or together with others both the power and intent to control its disposition or use of that substance.*

. . . .

The Defendant has also been charged with feloniously conspiring to sell cocaine. For you to find the Defendant guilty of this offense the State must prove three things beyond a reasonable doubt:

First, that the Defendant and Luis Nunez Garcia and Manuel Nunez Garcia entered into an agreement.

Second, that the agreement was to sell cocaine. Selling cocaine is *knowingly* selling cocaine to another.

(Emphasis added.) We hold the instructions given by the trial court, when read as a whole, adequately contained the substance of defendant's requested instruction—an explanation that defendant must have intentionally and voluntarily participated in the crimes.

Our Supreme Court has previously provided the meaning of the word "knowingly." In *State v. Stephenson*, 218 N.C. 258, 10 S.E.2d 819 (1940), our Supreme Court explained "[t]he word 'knowingly' . . . means that defendant knew what he was about to do, and, with such knowledge, proceeded to do the act charged." *Id.* at 264, 10 S.E.2d at 823. Subsequently, in *Underwood v. Board of Alcoholic Control*, 278 N.C. 623, 181 S.E.2d 1 (1971), our Supreme Court noted:

Knowledge means "an impression of the mind, the state of being aware; and this may be acquired in numerous ways and from many sources. It is usually obtained from a variety of facts and circumstances. Generally speaking, when it is said that a person has knowledge of a given condition, it is meant that his relation to it, his association with it, his control over it, and his direction of it are such as to give him actual information concerning it."

*Id.* at 632, 181 S.E.2d at 7 (quoting *State v. Hightower*, 187 N.C. 300, 308-09, 121 S.E. 616, 621 (1924)). Here, the trial court instructed the jury that in order to possess or sell cocaine, the defendant must have been aware of its presence and have had the power and intent to control its distribution or use. Therefore, the substance of the trial court's instructions, read in their entirety, effectively instructs the jury that defendant must have had knowledge of the substance and the crime being committed, and he must have intentionally and voluntarily participated in the crime. Accordingly, we find no error in the trial court's jury instructions.

However, we must note that had the trial court simply given the instruction requested by defendant at trial, defendant would have no basis to raise the trial court's decision not to do so on appeal. The better practice under circumstances such as those presented here is for the trial court to give the jury instruction requested by defendant when the requested instruction is correct on the law and properly based on the evidence adduced at trial.

## IV.  Conclusion

We hold the trial court erred in determining that Albritton did not give expert testimony and in failing to recognize the State's resulting discovery violation. However, we discern no abuse of discretion in the trial court's denial of defendant's request to strike the challenged evidence, and defendant has failed to meet his burden of showing he was prejudiced by the alleged error.

In addition, although the trial court denied defendant's request for a special jury instruction on the knowledge element of both offenses, we hold the trial court's jury instructions included the substance of defendant's requested instruction, and therefore, the trial court's denial of defendant's request was not erroneous. Accordingly, we hold defendant received a fair trial, free from prejudicial error.

No prejudicial error.

Judges McGEE and GEER concur.